Jason Mercer v. Thomas B. Finan Center, No. 9, September Term, 2021

**FORCED MEDICATION – RIGHT TO COUNSEL UPON REQUEST – WAIVER OF RIGHT –** Court of Appeals held that Md. Code. Ann., Health-Gen. (1982, 2019 Repl. Vol.) § 10-708(i) conferred right to counsel upon request, in light of plain language and legislative history of statute. Court of Appeals concluded that where form used to request administrative hearing contained no notice of consequences of declining to request counsel, and where individual received subsequent notice informing individual of right to request assistance of lawyer, individual's declination of legal representation on form did not waive individual's right to request counsel at administrative hearing. Although statute calls for prompt resolution of disputes, statute imposes no deadline on individual's request for counsel, permitting individual, unless right is waived, to request counsel up until time of administrative hearing. Court of Appeals determined that, although on-record advisement and waiver of right to counsel colloquy are not required to safeguard significant liberty interest at stake, verification that individual was advised of right to request counsel and knowingly and voluntarily waived counsel and wants to proceed unrepresented is required.

IN THE COURT OF APPEALS

OF MARYLAND

No. 9

September Term, 2021

_____

JASON MERCER

v.

THOMAS B. FINAN CENTER

_____

Getty, C.J.
McDonald
Watts
Hotten
Booth
Biran
Harrell, Jr., Glenn T. (Senior
Judge, Specially Assigned),

JJ.

_____

Opinion by Watts, J.
McDonald and Booth, JJ., concur and dissent.

_____

Filed: December 17, 2021


Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.

Suzanne C. Johnson, Clerk

Generally, we are able to decide what medication we want to take and what medication we do not want to take even if the medication is prescribed by a physician. A person who is confined at a mental health facility does not always have this choice. Md. Code. Ann., Health-Gen. (1982, 2019 Repl. Vol.) ("HG") § 10-708 sets forth procedures by which a mental health facility may forcibly administer psychiatric medication to an individual confined at a facility who refuses medication. When an individual who is confined at a mental health facility refuses medication, medication may be forcibly administered under two circumstances. See HG § 10-708(b). First, in an emergency, an individual may be forcibly medicated on the order of a physician if the individual "presents a danger to the life or safety of the individual or others[.]" HG § 10-708(b)(1). Second, in a nonemergency, an individual may be forcibly medicated where "the individual is hospitalized involuntarily or committed for treatment by order of a court and the medication is approved by a [clinical review] panel under the provisions of this section." HG § 10-708(b)(2).

In a nonemergency situation, a clinical review panel, which is composed of health professionals not directly responsible for the individual's treatment, must decide whether to approve the forcible administration of medication. See HG § 10-708(c)(2) and (g). If the panel approves forced medication, the panel's written decision must advise that the individual has "the right to request a hearing" and "[t]he right to request representation or assistance of a lawyer or other advocate of the individual's choice[.]" HG § 10-708(i)(4)(i) and (ii). Under the statute, the individual must request a hearing within forty-eight hours of receiving the panel's decision. See HG § 10-708(l)(1). But, the statute does not impose

a deadline on an individual's request for representation.

In July 2019, Jason Mercer, Petitioner, a patient at a psychiatric institution, refused to take prescribed psychotropic medication. After a panel was convened and approved forced medication, Mercer requested a hearing within the forty-eight-hour deadline but indicated on an appeal request form that he declined legal representation. The form presented Mercer four choices with respect to representation at the administrative hearing: (1) legal representation to be provided at no cost by the State's designated Legal Assistance Provider; (2) private legal representation at his own expense; (3) no legal representation and having a layperson serve as an advocate; or (4) no legal representation and appearing on his own behalf. Mercer checked the line indicating that he declined legal representation and would appear at the hearing on his own behalf. Six days later, Mercer received a notice of the hearing date from the Maryland Office of Administrative Hearings ("OAH") advising that he had the right to request representation or the assistance of a lawyer or other advocate of his choice.

On the day of the hearing, Mercer asked for counsel. The Administrative Law Judge ("the ALJ") treated the request for counsel as a request for a postponement. The ALJ determined that Mercer had been given the opportunity for legal representation at no cost to himself and had indicated on the appeal request form and verbally to a rights advisor[1] that he did not want counsel. After making this determination, the ALJ announced that

---

[1]A lay advisor or rights advisor is a person who is responsible for, among other things, informing an individual of the right to appeal if a panel approves the administration of medication. See HG § 10-708(k)(1).

there was not good cause to postpone the hearing. The hearing took place with Mercer unrepresented.

Against this backdrop, we must determine whether the ALJ was required to conduct an on-the-record waiver colloquy to determine whether Mercer waived the right to request counsel under HG § 10-708. Implicit in this question is the issue of whether a right to counsel exists under HG § 10-708 and, if so, whether the act of checking a line declining representation on an appeal request form constitutes a waiver of the right to counsel. We hold that, under the plain language of HG § 10-708, an individual possesses a right to counsel upon request. Stated differently, if an individual makes a request, the individual has the right to counsel. The plain language of the statute imposes no time limit or deadline by which an individual must make a request for counsel. Therefore, unless the right is waived, an individual may request counsel up to the time of and including at the administrative hearing. To safeguard the right to counsel, an on-the-record waiver colloquy of the kind required in a criminal case is not necessary, but there must be verification that an individual has knowingly and voluntarily waived the right to counsel and elected to proceed without legal representation. Applying these principles, we conclude that in this case the ALJ erred in declining Mercer's request to be represented by counsel at the administrative hearing.

## BACKGROUND

The Thomas B. Finan Center ("the Center"), Respondent, is an inpatient psychiatric facility run by the Maryland Department of Health ("the Department") and located in Cumberland, Maryland. In January 2018, Mercer was involuntarily admitted to the Center.

Several years earlier, a circuit court had found Mercer not criminally responsible under Md. Code Ann., Crim. Proc. (2001, 2008 Repl. Vol.) § 3-112 for second-degree assault and unauthorized use of a motor vehicle. Mercer is diagnosed with a schizoaffective disorder of bipolar type.[2]

Following his admission to the Center, Mercer took prescribed psychotropic medications after cajoling and negotiation, but improved such that he was able to be transferred to a less-restrictive unit. On July 18, 2019, though, Mercer began refusing the proper dose of the medication. Mercer also declined food and water on the grounds that the food was processed and that he was uncertain about the contents of the water. Mercer's psychiatrist arranged for the Center to provide yogurt or produce alongside regular meals, which Mercer ate. Nevertheless, Mercer, who originally weighed 208 pounds before refusing food and water, lost approximately 24 pounds, and weighed 184 pounds at the time of the hearing. Mercer also experienced symptoms of dehydration. In addition, Mercer refused to attend group therapy sessions, and instead held "his own therapeutic group" meetings with other patients. According to Center staff, Mercer urged other patients to reject treatment as well. Once, as a result of Mercer's "counseling" of another patient to discontinue electroconvulsive therapy, Center staff had to spend additional time persuading the patient to continue with the treatment.

On another occasion, Mercer allegedly caused other patients to become agitated to the point that staff had to clear a Center day room. Later the same day, during a psychiatry

---

[2]The Notice of Clinical Review Panel identifies Mercer's diagnosis as "Schizophrenia[.]"

session, Mercer indicated he needed to see a doctor due to a rash on his arm. When the rash could not be located, Mercer began thrashing his arms, legs, and head, and was eventually offered medication.[3] On August 1, 2019, the Center notified Mercer and his rights advisor, Lisa Olinger, that a panel would meet on August 5, 2019 to decide whether the psychiatric medication prescribed by Mercer's treating physician, Dr. Jessica Merkel-Keller, would be given to him despite his refusal.

## The Panel's Written Decision

On August 5, 2019, a panel consisting of Herb Chissell, M.D., Elliott Gauer, DO, and Jim Crable, RPh, convened. Dr. Merkel-Keller and Olinger also attended. Mercer spoke at the panel meeting but left early. At the conclusion of the meeting, the panel recommended forced medication. In a written decision issued the same day, the panel indicated that the statutory criteria necessary for the involuntary administration of medication set forth in HG § 10-708(g) were satisfied. The panel's written decision approved forced administration of various medications, including fluphenazine (generic Prolixin), an antipsychotic, for ninety days. The decision stated:

> IF YOU DISAGREE WITH THIS DECISION, YOU MAY REQUEST A HEARING BEFORE AN ADMINISTRATIVE LAW JUDGE BY INFORMING THE RIGHTS ADVISOR OR THE CHIEF EXECUTIVE OFFICER (CEO) OR DESIGNEE OF THE FACILITY THAT YOU WANT TO FILE AN APPEAL.

(Capitalization in original) (bolding omitted). The decision also provided:

> If you want to appeal the panel's decision, you must make your request for a

---

[3]In addition, on the evening of August 13, 2019, after requesting a hearing but before the hearing occurred, Mercer ripped up a floorboard from his room and hid it in the room. Center staff searched the room and found the floorboard.

- 5 -

hearing within 48 hours of being given this notice. If you appeal, a hearing will be held within 7 days of receipt of this notice, unless the administrative law judge grants a postponement. . . . If you appeal, you have the right to request representation or assistance at the hearing from the agency indicated below or from a lawyer or other advocate of your choice. The facility rights advisor will assist you.

The panel's written decision supplied the name, address, and telephone number of the "Legal Assistance Provider and the Lawyer Referral Service[,]" which was listed as Maryland Legal Aid, and explained: "or Maryland Legal Aid can be reached through the assistance of Lisa Olinger, Rights Advisor [phone number]."

**The Appeal Request Form**

On the same day, after the panel meeting, Olinger gave Mercer a copy of the panel's written decision and a form entitled "Resident Grievance System Request to Appeal Decision of Clinical Review Panel" ("the Appeal Request Form"). The Appeal Request Form advised that the individual "has 48 hours following receipt of this decision to file an appeal" and that any hearing would be "scheduled within 7 days[,]" but that the hearing could be postponed for good cause shown or by agreement of the parties. Beneath that, a statement explained: "I hereby appeal the decision of the Clinical Review Panel and have indicated below my choice for representation at the Administrative Appeal." (Bolding omitted). Below this statement the individual could select from four options:

I hereby request that legal representation be provided, at no cost to me, by the State's designated Legal Assistance Provider and authorize that the Notice of CRP, Decision of CRP, and Request to Appeal Decision of CRP be released to them.

I will obtain private legal representation, at my own expense, and authorize that the Notice of CRP, Decision of CRP, and Request to Appeal Decision of CRP be released to: _____

- 6 -

> I hereby decline legal representation. I request that the following serve as my advocate and authorize that the Notice of CRP, Decision of CRP, and Request to Appeal CRP be released to: _____
>
> I hereby decline legal representation and will appear on my own behalf.

On August 7, 2019, after a conversation with Olinger, Mercer selected the last option—"I hereby decline legal representation and will appear on my own behalf"—by affixing a check mark on a blank line next to the option, and signing and dating the Appeal Request Form. Olinger also signed and dated the Appeal Request Form.

### The Notice of Hearing

On August 13, 2019, Mercer received a "Notice of Hearing for Refusal of Psychiatric Medication" from OAH ("the Notice of Hearing"). The Notice of Hearing stated that an administrative hearing had been scheduled for August 16, 2019, and advised: "You have the right to request representation or assistance of a lawyer or other advocate of your choice." The Notice of Hearing did not set forth a deadline for requesting representation or indicate that the request needed to be made before the hearing or by any other time.

### The Administrative Hearing

The administrative hearing occurred on August 16, 2019,[4] before an ALJ. After turning on the recording device and beginning the hearing, the ALJ stated that Mercer had advised that he wanted legal representation. The ALJ told Mercer that he had been given

---

[4]The cover page and the first page of the transcript of the hearing before the ALJ state that the hearing occurred on August 26, 2019. This is a typographical error. It is clear from the record that the hearing occurred on August 16, 2019.

- 7 -

an opportunity on the Appeal Request Form to request that legal representation be provided at no cost but that he "did not mark that off[.]"  Mercer again requested an attorney, and stated that he did not recall filling out or signing the Appeal Request Form.  The ALJ requested that Olinger be located and come to the hearing room to speak with Mercer off the record about his request for legal assistance.  Mercer asked that the conversation with Olinger take place on the record.  After Olinger arrived, the following exchange occurred on the record:

> [THE ALJ]: Mr. Mercer says that he does not recall reviewing that document, nor does he recall signing that document where he had declined legal representation.  Can you tell us, you know, what sort of interactions you may have had with Mr. Mercer with regard to his election to have counsel?
>
> [] OLINGER: Sure.  We met briefly the day the decision came out.  And at that time, he didn't care about an appeal.  But then the next -[-] the following day, he did -- he asked if an appeal could stop the medication, and I said until you go before a judge and they make a decision.  So, he said okay.  Let's do it.  So, we went over the different categories.  And he said, no need for an attorney.  So, he did sign the form.  I signed the date and time and initialed that and explained that there would be no attorney present.
>
> [] MERCER: May I say something?
>
> [THE ALJ]: What would you like to say, sir?
>
> [] MERCER: We've had many conversations.  I may have possibly filled out this form.  I called -- what I would have liked when working with her, if I would've had legal counsel available when I was filling out legal documents to prepare a case, it would've been better.  I had called the one number for the legal aid or something, and they weren't able to help me.  But I think this might be a flaw in the process.  If I'm filling out forms that can be used in a legal representation and I don't have legal counsel while I'm doing it, that might cause problems later on, like right now where I'm not sure if I signed this or wrote it or something, or what my reasons were.  I mean, if I was in a hearing, what I really would like to have is to have a lawyer.  And I think I have a right to that under the Constitution.  So, those are my thoughts.

[THE ALJ]: So, counsel?

[COUNSEL FOR THE CENTER]: Your Honor, Ms. Olinger is here. She has testified that she met --

[THE ALJ]: Well, she didn't testify.

[COUNSEL FOR THE CENTER]: Right.

[THE ALJ]: She commented.

[COUNSEL FOR THE CENTER]: Commented that she, in fact, met with Mr. Mercer, he declined representation at that time. This document was signed August 7, 2019. At no point since that time did Mr. Mercer note a desire to have representation. The Hospital's argument today is going to be that Mr. Mercer presents a danger to himself, others, while in the hospital because of his refusal to take medication. And as a result, I would ask that any postponement request so that Mr. Mercer can obtain representation be denied. He continues to pose a danger and risk to himself and to others without the administration of medication.

[] MERCER: I'd have to --

[THE ALJ]: All right. Thank you.

[] MERCER: May I disagree with that, or --

[THE ALJ]: You may.

[] MERCER: I really don't feel like I've been a risk to anybody. I've been working --

[THE ALJ]: Okay. So, that's a little separate from what we're talking about now. We're talking about the right to counsel. So, sir, there are certain procedural safeguards that are put into place for these hearings, one of which, which is consistent with the statute and the regulations, is to give the resident an opportunity to, one, appeal a decision of the Clinical Review Panel, but secondly to request to have legal representation. I am persuaded by Ms. Olinger's description of her meeting with you going over the paperwork not only, one, to explain what an appeal of a Clinical Review Panel would involve, but secondly, whether or not you wanted to have counsel. There's no requirement under the law, under the statute, that you have legal counsel to go through this particular document with the rights advisor. There's

- 9 -

nothing in place that suggests that you would have the right to counsel just to review this particular document. And when you reviewed the document, you very clearly indicated to Ms. Olinger that you declined legal representation, you were given the opportunity to have legal representation at no cost to yourself, and in fact, it would be the rights advisor who would've assisted you in obtaining that legal representation for the hearing today. I do not find good cause to postpone this hearing in order for you to have counsel when you so clearly identified to Ms. Olinger not only verbally but on this form that you declined legal counsel. And I do not find good cause to postpone this hearing in light of the statements made by counsel that you continue to represent a danger to yourself or others.

[] MERCER: May I just say something real fast?

[THE ALJ]: What would you like to say, sir?

[] MERCER: Well, I don't understand everything you said because I don't understand all the words, and I've got a headache and I need some water. But the first thing you said, you were talking about procedures and having a lawyer. I don't understand how all of these procedures work and that's why I'd like to have a lawyer. And so, you said that we don't have a right under the statute or something to have an attorney. But I think under the Constitution, you have a basic right to have an attorney. So -[-]

[THE ALJ]: Sir, you do not have a basic right to have an attorney to review a particular document that under the statute --

[] MERCER: Okay. I --

[THE ALJ]: -- and under the law --

[] MERCER: I'm confused. I just don't understand.

[THE ALJ]: -- the rights advisor met with you, which is all that is required of the Hospital, to discuss what your rights are with regard to requesting an appeal to have a hearing like the one we're having today, or two, to request counsel. You've had a whole lot of time between the time you filled out this form until now to change your mind and ask for counsel, or you can consult with Ms. Olinger. So, no, sir. We're not going to have any more conversation on this topic. I have overruled your request for a postponement --

[] MERCER: Okay.

- 10 -

[THE ALJ]: -- in order to obtain counsel for this hearing.

(Paragraph breaks omitted). The ALJ excused Olinger and continued the hearing. The ALJ advised Mercer that the Center would need to prove by a preponderance of the evidence "four prongs"—namely, that he refused psychiatric medication, the medication was prescribed for the purpose of treating a mental disorder, the administration of the medication was set forth in a panel decision and represented a reasonable exercise of professional judgment, and without the medication he would remain at a substantial risk of hospitalization that would cause him to be seriously mentally ill with no significant relief or he might relapse. The ALJ indicated that Dr. Merkel-Keller would testify on behalf of the Center, that Mercer could cross-examine the doctor, and that she (the ALJ) would then "turn [her] attention" to Mercer for him to testify as to why he believed the four prongs were not satisfied.

The ALJ admitted into evidence the Center's Exhibits 1-5, which consisted of the Notice of Hearing dated August 13, 2019, the Notification of Appeal dated August 12, 2019 (notice to the ALJ), the Appeal Request Form, the panel's written decision, and the Notice of Clinical Review Panel. Over Mercer's objection, the ALJ accepted Dr. Merkel-Keller as an expert in the field of psychiatry. Dr. Merkel-Keller testified regarding Mercer's history at the Center, diagnosis, and the events giving rise to the forced medication proceedings. Dr. Merkel-Keller testified that Mercer presented a danger to himself because of his refusal to consume food and water and resulting dehydration, which could lead to kidney damage, and that Mercer's apprehension about the food and water was

- 11 -

not a legitimate health concern, but rather a "delusional[]" suspicion. Dr. Merkel-Keller testified that Mercer presented a danger to others because of his informal counseling of patients to refuse treatment. According to Dr. Merkel-Keller, Mercer displayed "treatment interfering behavior[,]" and Mercer's counseling of other patients constituted "practicing medicine without a license[]" and a "power struggle."

Following Dr. Merkel-Keller's testimony, Mercer had an opportunity for cross examination. Mercer asked a question seeking to clarify the names of the offenses for which he had been found not criminally responsible and, after Dr. Merkel-Keller responded, stated that he agreed that the offenses were unauthorized use of a vehicle and second-degree assault. The ALJ interjected: "Okay. Now you're making comments[,]" causing Mercer to respond: "I'm sorry. I'm sorry. I'm not a lawyer. That is why I ask -[-.]" At that point, the ALJ stopped Mercer and advised him: "[Y]ou've already told me that" and "I do not need to hear that again." Afterward, Mercer asked Dr. Merkel-Keller whether the individuals who documented the alleged incidents in the unit could testify about what they saw. Counsel for the Center objected, and the ALJ sustained the objection and stated: "Sir, next question." Mercer advised that those were all the questions he had. The ALJ then informed Mercer that he could testify as to "why you either, one, do not wish to take the medication, or two, you believe that the [Center]'s representation that you present a substantial risk of continued hospitalization for a variety of reasons is untrue." Mercer testified that he had previously taken one of the medications and it made him sleep twelve hours a day and unable to work. Mercer questioned the accuracy of his diagnosis, indicated that Center staff did not listen to him, and testified that he did not pose a risk to

anyone. Mercer testified that he needed clean water and "some good quality food" and, if provided with those things, he would "feel a lot better."

Counsel for the Center presented closing argument. When asked what he would like to say as closing argument, Mercer stated that he should not be forcibly medicated because it is "torture which is prohibited by the Eighth Amendment protection against cruel and unusual punishment." After that, the ALJ made findings of fact and concluded that the Center had shown by a preponderance of the evidence that Mercer "should be medicated with the psychiatric medications which were listed in the August 5, 2019, Clinical Review Panel Decision, not to exceed 90 days."

**Judicial Review in the Circuit Court**

On August 29, 2019, on his own behalf, Mercer filed a petition for judicial review in the Circuit Court for Allegany County. On September 4, 2019, the circuit court conducted a hearing. At the time, Mercer was represented by counsel, who asserted that the ALJ improperly denied Mercer's request for counsel by not taking testimony on the issue of waiver on the record and that the Appeal Request Form was not an effective waiver of Mercer's right to counsel. Mercer sought as relief a new administrative hearing. Counsel for the Center argued that, although Mercer had a right to request counsel, it was within the ALJ's discretion to deny the request because Mercer had declined representation. The circuit court denied the request for a new hearing and ruled that Mercer had "the right to representation afforded him by statute and before the ALJ[,]" and that the Appeal Request Form was permissible under the statute and an effective waiver. Although the circuit court indicated that it was possible for an individual in certain situations to have

- 13 -

a change of mind regarding counsel, the court stated that whether to grant a request for counsel at a hearing rested within the discretion of the ALJ. The circuit court affirmed the ALJ's decision, and Mercer appealed.

**Opinion of the Court of Special Appeals**

On January 28, 2021, the Court of Special Appeals affirmed the circuit court's judgment. See Mercer v. Thomas B. Finan Ctr., 249 Md. App. 144, 151, 245 A.3d 85, 88 (2021). The Court of Special Appeals concluded that HG § 10-708(i)(4)(ii) confers upon patients a right to request legal representation, but not an automatic right to counsel "absent a timely request." Id. at 161, 245 A.3d at 94. The Court of Special Appeals reasoned that because Mercer had declined the assistance of counsel before the hearing, "the ALJ did not err or abuse her discretion in deciding not to postpone the hearing until counsel could be obtained." Id. at 155, 245 A.3d at 91. The Court of Special Appeals stated that the ALJ had the discretion to deny Mercer's "request to postpone the hearing" and was not required to conduct a waiver colloquy because HG § 10-708 does not create a statutory right to counsel, but rather the right to request counsel. Id. at 160, 245 A.3d at 94.

According to the Court of Special Appeals, individuals have the right to assistance of counsel if they first request such assistance and, in this case, Mercer affirmatively declined the right to request legal representation and belatedly attempted to rescind his decision. See id. at 162, 245 A.3d at 95. The Court of Special Appeals stated that, although HG § 10-708 does not set forth a specific timeline for a patient to request counsel, "the statutory scheme can operate effectively only if a patient makes the request for counsel within a reasonable period of time in advance of the hearing before the ALJ, so that the

hearing need not be postponed." Id. at 166-67, 245 A.3d at 98.  The Court of Special

Appeals concluded that based on its application of the balancing test set forth by the

Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 335 (1976), the ALJ did not deprive

Mercer of procedural due process by failing to postpone the hearing for him to obtain

counsel.  See Mercer, 249 Md. App. at 172, 245 A.3d at 101.  The Court of Special Appeals

did not reach the question of whether Mercer would have been permitted to "rescind[] his

decision to proceed without counsel at some point earlier than he did."  Id. at 167, 245 A.3d

at 98.

## Petition for a Writ of *Certiorari*

On March 17, 2021, Mercer petitioned for a writ of *certiorari*, raising the following

issue: "Did the Court of Special Appeals err in determining that Health-General § 10-708

does not require an ALJ to make an on-the-record assessment of whether Mercer waived

his statutory right to counsel?"  (Footnote omitted).  On May 11, 2021, this Court granted

the petition.  See Mercer v. Thomas B. Finan Ctr., 474 Md. 632, 255 A.3d 169 (2021).

## DISCUSSION

### The Parties' Contentions

Mercer contends that HG § 10-708 sets forth a statutory scheme for providing due

process to patients and that the plain language of HG § 10-708(i)(4)(ii) provides a statutory

right to the assistance of counsel at an administrative hearing.  Specifically, Mercer argues

that the phrase "right to request a hearing" in HG § 10-708(i)(4)(i), which is treated as a

right to a hearing, indicates that the language of "right to request representation" under HG

§ 10-708 (i)(4)(ii) confers a right to counsel.  Citing Beeman v. Dep't of Health & Mental

<u>Hygiene</u>, 107 Md. App. 122, 145, 666 A.2d 1314, 1325 (1995), Mercer maintains that the Court of Special Appeals has previously characterized the language of HG § 10-708 as providing a right to counsel and that the legislative history of the statute demonstrates that the General Assembly intended that a patient have a right to counsel.  Mercer points out that a Fiscal Note from the 1991 amendment to HG § 10-708 contains a notation of the cost expected for the legal representation of patients at appeals hearings.  Mercer contends that the inclusion of the estimated cost is evidence of the General Assembly's intent that the State fund legal representation for patients at hearings and of the intent to create a right to counsel.

The Center responds that HG § 10-708 does not create an affirmative statutory right to counsel and instead, the plain language of the statute provides an individual with a right to request counsel.  According to the Center, the legislative history of the statute supports this reading.  The Center argues that the ALJ's obligation at the administrative hearing was to determine whether Mercer had previously declined to request counsel and that the ALJ was not required to determine whether Mercer had knowingly and voluntarily waived the right.  The Center asserts that, although the statute does not so require, the Department provides legal assistance at no cost to any individual who timely requests counsel before the hearing.  The Center maintains that the provision of legal assistance at no cost is due to a consent decree in <u>Coe, et al. v. Harry R. Hughes, et al.</u>, No. K-83-4248 (D. Md. Apr. 18 1985) and, as such, does not indicate that a right to counsel exists under HG § 10-708.

## Standard of Review

In considering the merits of an agency decision, "we review directly the administrative decision, not the decisions of the courts that previously reviewed the agency decision before it came to us." Allmond v. Dep't of Health & Mental Hygiene, 448 Md. 592, 608, 141 A.3d 57, 66 (2016) (citation omitted). We apply a substantial evidence standard in reviewing an ALJ's findings of fact, but review conclusions of law without deference. See Johnson v. Md. Dep't of Health, 470 Md. 648, 673, 236 A.3d 574, 588 (2020).

## Relevant Law

### *HG § 10-708*

HG § 10-708 was originally enacted in 1984 and sets forth the framework governing the forced administration of psychiatric medication to an individual who refuses medication. See Allmond, 448 Md. at 613, 141 A.3d at 69. HG § 10-708 alters the common law rule that a doctor treating a mentally competent adult may not "perform surgery or administer other therapy" without that person's consent unless an emergency exists. Williams v. Wilzack, 319 Md. 485, 494, 573 A.2d 809, 813 (1990) (quoting Sard v. Hardy, 281 Md. 432, 439, 379 A.2d 1014, 1019 (1977)). Medication qualifies as a type of treatment under the common law rule. See Dep't of Health & Mental Hygiene v. Kelly, 397 Md. 399, 418, 918 A.2d 470, 481 (2007); Williams, 319 Md. at 494-95, 573 A.2d at 813. This Court has recognized that under the Due Process Clause of the Fourteenth Amendment an individual has a constitutionally protected liberty interest in being free from the arbitrary forced administration of psychiatric medication. See Williams, 319 Md. at

- 17 -

501, 573 A.2d at 817.

HG § 10-708(b) permits forced administration of psychiatric medication in two

narrow circumstances:

> (1) In an emergency, on the order of a physician where the individual
> presents a danger to the life or safety of the individual or others; or
>
> (2) In a nonemergency, when the individual is hospitalized involuntarily or
> committed for treatment by order of a court and the medication is approved
> by a panel under the provisions of this section.

This language applies to three specific categories of involuntarily committed individuals:

> individuals involuntarily committed to a state institution civilly
> under Section 10-632(e) of the Health-General Article; individuals
> involuntarily committed after having been found not criminally responsible
> under Section 3-112 of the Criminal Procedure Article, Maryland Code
> (2001); and individuals involuntarily committed after being found
> incompetent to stand trial under Section 3-106(b) of the Criminal Procedure
> Article, Maryland Code (2001)[.]

Kelly, 397 Md. at 419, 918 A.2d at 481-82. In a nonemergency, there are certain

procedures that a panel must follow in determining whether to approve the forced

administration of medication. See HG § 10-708. First,

> A panel shall convene within 9 days after an individual's refusal of
> medication for a period of at least 72 hours if: (1) The individual was
> committed to a hospital under Title 3 of the Criminal Procedure Article
> because of a mental disorder; and (2) The treatment plan developed under §
> 10-706 of this subtitle indicates that there is a substantial likelihood that,
> without immediate treatment, the individual will remain a danger to self or
> the person or property of another.

HG § 10-708(j) (paragraph breaks omitted). Before a panel meets, adequate notice must

be provided to the individual. Specifically, "[t]he chief executive officer of the facility" or

a designee must "give the individual and the lay advisor written notice at least 24 hours

prior to convening a panel." HG § 10-708(d)(1). The lay advisor is "an individual at a facility, who is knowledgeable about mental health practice and who assists individuals with rights complaints." HG § 10-708(a)(2). Notice to the individual and the lay advisor must contain the following: "(i) The date, time, and location that the panel will convene; (ii) The purpose of the panel; and (iii) A complete description of the rights of an individual under paragraph (2) of this subsection." HG § 10-708(e)(1) (paragraph breaks omitted).

A panel must consist of: "(i) The clinical director of the psychiatric unit, if the clinical director is a physician, or a physician designated by the clinical director; (ii) A psychiatrist; and (iii) A mental health professional, other than a physician." HG § 10-708(c)(1). The statute specifically provides that no member of the panel should be involved in the individual's treatment plan. See HG § 10-708(c)(2). At a panel, an individual has the following rights:

(i) To attend the meeting of the panel, excluding the discussion conducted to arrive at a decision;

(ii) To present information, including witnesses;

(iii) To ask questions of any person presenting information to the panel;

(iv) To request assistance from a lay advisor; and

(v) To be informed of:

1. The name, address, and telephone number of the lay advisor;

2. The individual's diagnosis; and

3. An explanation of the clinical need for the medication or medications, including potential side effects, and material risks and benefits of taking or refusing the medication.

- 19 -

HG § 10-708(e)(2). The panel may approve the administration of medication if it finds:

(1) The medication is prescribed by a psychiatrist for the purpose of treating the individual's mental disorder;

(2) The administration of medication represents a reasonable exercise of professional judgment; and

(3) Without the medication, the individual is at substantial risk of continued hospitalization because of:

(i) Remaining seriously mentally ill with no significant relief of the mental illness symptoms that:

1. Cause the individual to be a danger to the individual or others while in the hospital;

2. Resulted in the individual being committed to a hospital under this title or Title 3 of the Criminal Procedure Article; or

3. Would cause the individual to be a danger to the individual or others if released from the hospital;

(ii) Remaining seriously mentally ill for a significantly longer period of time with the mental illness symptoms that:

1. Cause the individual to be a danger to the individual or to others while in the hospital;

2. Resulted in the individual being committed to a hospital under this title or Title 3 of the Criminal Procedure Article; or

3. Would cause the individual to be a danger to the individual or others if released from the hospital; or

(iii) Relapsing into a condition in which the individual is unable to provide for the individual's essential human needs of health or safety.

HG § 10-708(g). The panel must base a decision to approve forced medication on "its clinical assessment of the information contained in an individual's record and information presented to the panel." HG § 10-708(h)(1). The panel may not approve forced medication

- 20 -

if alternative treatments exist and are acceptable to the individual and the facility personnel directly responsible for treating the individual. See HG § 10-708(h)(3).

The panel must supply the individual, the lay advisor, and the individual's treatment team a copy of its written decision.[5] See HG § 10-708(i)(2). If a panel approves forced medication, the panel's written decision must inform the individual of the following:

(i) Notice of the right to request a hearing under subsection (l) of this section;

(ii) The right to request representation or assistance of a lawyer or other advocate of the individual's choice; and

(iii) The name, address, and telephone number of the designated State protection and advocacy agency and the Lawyer Referral Service.

HG § 10-708(i)(4). HG § 10-708(k) requires the rights advisor to:

(1) Inform the individual of the individual's right to appeal the decision under subsection (l) of this section;

(2) Ensure that the individual has access to a telephone as provided under § 10-702(b) of this subtitle;

(3) If the individual requests a hearing, notify the chief executive officer of the facility or the chief executive officer's designee pursuant to [paragraph] (l)(1) of this section and give the individual written notice of the date, time, and location of the hearing; and

(4) Advise the individual of the provision for renewal of an approval under subsection (n) of this section.

HG § 10-708(l)(1) provides that an individual may request an administrative hearing

---

[5]If the panel approves the administration of medication, the decision shall specify the medication approved, including its dosage and frequency, the duration of the approval, not to exceed the time provided by the statute (ninety days), and the reason that alternative treatments, including medication, if any, were rejected by the panel. See HG § 10-708(i)(3).

to appeal a panel's decision by filing a request for a hearing with the chief executive officer of the facility or a designee and sets a deadline for making such a request of "within 48 hours of receipt of the decision of the panel." If an individual requests a hearing within the forty-eight-hour period, OAH must conduct a hearing and issue a decision within seven calendar days of the panel's decision. See HG § 10-708(l)(4). At the hearing, a facility bears the burden of proving by a preponderance of the evidence that the standards and procedures of the statute are satisfied. See HG § 10-708(l)(7)(ii). The ALJ must state on the record findings of fact and conclusions of law. See HG § 10-708(l)(8). The ALJ's decision constitutes a final decision under the Maryland Administrative Procedure Act and can be appealed to a circuit court within fourteen calendar days. See HG § 10-708(l)(9), (m)(1). A circuit court must "hear and issue a decision on an appeal within 7 calendar days from the date the appeal was filed." HG § 10-708(m)(4).

Although HG § 10-708 provides for compact timelines, the chair of a panel may "[p]ostpone or continue the panel for good cause, for a reasonable time[.]" HG § 10-708(e)(3)(i). In addition, "[t]he administrative hearing may be postponed by agreement of the parties or for good cause shown." HG § 10-708(1)(5). The statute places limitations on the ability to forcibly administer medication to an individual during the process. First, unless an emergency exists, an individual may not be forcibly medicated before the panel's decision. See HG § 10-708(d)(2). Next, regardless of whether the individual requests an administrative hearing, a panel decision to forcibly medicate "shall be stayed for 48 hours." See HG § 10-708(1)(3). If an individual requests an administrative hearing, "the stay shall remain in effect until the issuance of the administrative decision." Id. A panel may only

- 22 -

approve forcible medication for a period not to exceed ninety days.  See HG § 10-708(n)(1).  Prior to expiration of the approval period, if the individual continues to refuse medication, a panel may be convened to decide whether renewal of treatment is warranted.  See HG § 10-708(n)(2)(i).  If the individual appeals the renewal of approval, however, the facility can administer medication to the individual during the appeal period.  See HG § 10-708(n)(2)(ii).

### *Pre-Williams Guidance*

In 1990, following a series of cases in the Supreme Court of the United States addressing issues involving procedural and substantive due process in cases of involuntary commitment and the forced administration of psychiatric medication, this Court declared that the existing version of HG § 10-708 failed to afford procedural due process to patients subject to involuntary administration of medication.  See Williams, 319 Md. at 495-507, 509-10, 573 A.2d at 814-21.  Prior to Williams, in Vitek v. Jones, 445 U.S. 480, 482-83 (1980), the Supreme Court addressed whether the Due Process Clause of the Fourteenth Amendment entitled a prisoner who had been convicted and incarcerated in Nebraska certain due process protections, including notice, an adversary hearing, and provision of counsel, before the prisoner was involuntarily transferred to a State psychiatric hospital for treatment.  A Nebraska statute provided that, when a designated physician or psychologist found that a prisoner suffered from a "mental disease or defect" and the prisoner could not be given proper treatment in the prison facility, the Director of Correctional Services was authorized to transfer the prisoner for examination, study, and treatment to another institution either within or outside of the Department of Correctional Services for as long

as treatment was necessary. Id. at 483. Jones had been convicted and sentenced to a term of incarceration to be served in a prison and later, pursuant to the Nebraska statute, was transferred to a psychiatric hospital under the jurisdiction of the Department of Public Institutions. See id. at 484. Jones challenged the process by which the statute permitted transfer from a prison to a hospital on procedural due process grounds. See id. The trial court concluded that the statute was unconstitutional as applied to Jones because transferring him to a hospital without adequate notice and an opportunity for a hearing was a deprivation of his liberty without due process of law. See id. at 485. The trial court ruled that such a transfer "must be accompanied by adequate notice, an adversary hearing before an independent decisionmaker, a written statement by the factfinder of the evidence relied on and the reasons for the decision, and the availability of appointed counsel for indigent prisoners." Id. (citation omitted).

The United States Supreme Court agreed with the trial court that the involuntary transfer of a Nebraska state prisoner to a psychiatric hospital implicated a liberty interest protected by the Due Process Clause. See id. at 487-88. The Supreme Court concluded that, by providing that a prisoner would not be transferred unless the prisoner suffered from a mental disease or defect that could not adequately be treated in prison, the statute "gave Jones a liberty interest that entitled him to the benefits of appropriate procedures in connection with determining the conditions that warranted his transfer[.]" Id. at 489-90. The Supreme Court explained that, because the statute provided a prisoner with "a right or expectation that adverse action" would not be taken except where the prisoner has engaged in certain behavior, "the determination of whether such behavior has occurred becomes

critical, and the minimum requirements of procedural due process appropriate for the circumstances must be observed." Id. at 490-91 (cleaned up).

The Supreme Court agreed with the trial court that, independent of the statute, "the transfer of a prisoner from a prison to a mental hospital must be accompanied by appropriate procedural protections" because, even after conviction and imprisonment, a prisoner "is entitled to the benefit of procedures appropriate in the circumstances before he is found to have a mental disease and transferred to a mental hospital." Id. at 491, 493. The Supreme Court explained: "A criminal conviction and sentence of imprisonment extinguish an individual's right to freedom from confinement for the term of his sentence, but they do not authorize the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections." Id. at 493-94.

The Supreme Court concluded that, among other things, before transferring a prisoner to a hospital, Nebraska was required to provide written notice to the prisoner that a transfer to a mental hospital was being considered. See id. at 494-95. The Supreme Court stated that, although the questions of whether an individual is mentally ill and cannot be treated in prison are medical in nature, that did "not justify dispensing with due process requirements" because "[i]t is precisely the subtleties and nuances of psychiatric diagnoses that justify the requirement of adversary hearings." Id. at 495 (cleaned up). As to the right to counsel, a plurality of the Supreme Court determined that counsel was required to be provided to indigent prisoners whom Nebraska sought to treat as mentally ill, explaining:

We have not required the automatic appointment of counsel for indigent prisoners facing other deprivations of liberty, but we have recognized that prisoners who are illiterate and uneducated have a greater need for assistance in exercising their rights. A prisoner thought to be suffering from a mental disease or defect requiring involuntary treatment probably has an even greater need for legal assistance, for such a prisoner is more likely to be unable to understand or exercise his rights. In these circumstances, it is appropriate that counsel be provided to indigent prisoners whom the State seeks to treat as mentally ill.

Id. at 482, 496-97 (citations omitted). In a concurring opinion, Justice Powell agreed "that qualified and independent assistance must be provided to an inmate who is threatened with involuntary transfer to a state mental hospital[,]" but disagreed "that the requirement of independent assistance demands that a licensed attorney be provided." Id. at 497 (Powell, J., concurring) (footnote omitted).

Two years later, in Youngberg v. Romeo, 457 U.S. 307, 309 (1982), the Supreme Court addressed whether an individual who was involuntarily committed to a State institution had substantive due process rights to safe conditions of confinement, freedom from bodily restraints, and training or habilitation. In Youngberg, an individual sued three administrators of a state institution pursuant to 42 U.S.C. § 1983 seeking damages for an alleged breach of his constitutional rights. See id. The Supreme Court held that the individual retained liberty interests in safe conditions and freedom from bodily restraint that involuntary commitment proceedings do not extinguish. See id. at 315-16. The Supreme Court concluded that, under the circumstances of the case, the individual's "liberty interests require[d] the State to provide minimally adequate or reasonable training to ensure safety and freedom from undue restraint." Id. at 319. The Supreme Court explained, however, that such liberty interests are not absolute and that a determination of

whether a substantive right protected by the Due Process Clause has been violated requires a balancing between "the liberty of the individual and the demands of an organized society." Id. at 319-20 (cleaned up). Stated differently, the Supreme Court concluded that, whether the individual's "constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests." Id. at 321.

In an opinion issued on the same date, in Mills v. Rogers, 457 U.S. 291, 293 (1982), the Supreme Court considered "whether involuntarily committed mental patients have a constitutional right to refuse treatment with antipsychotic drugs." The Supreme Court stated that the issue "has both substantive and procedural aspects[,]" and that the parties agreed "that the Constitution recognizes a liberty interest in avoiding the unwanted administration of antipsychotic drugs." Id. at 299 (cleaned up). The Supreme Court stated that, assuming the parties were correct, the substantive issue concerned "a definition of that protected constitutional interest, as well as identification of the conditions under which competing state interests might outweigh it" and the procedural issue concerned "the minimum procedures required by the Constitution for determining that the individual's liberty interest actually is outweighed in a particular instance." Id. (citations omitted). The Supreme Court stated that, as a practical matter, the substantive and procedural issues were "intertwined with questions of state law[,]" which could "recognize liberty interests more extensive than those independently protected by the Federal Constitution[.]" Id. at 299-300 (citations omitted).

Eight years later, in Washington v. Harper, 494 U.S. 210, 213 (1990), the Supreme Court addressed "whether a judicial hearing is required before the State may treat a

- 27 -

mentally ill prisoner with antipsychotic drugs against his will." Harper had been convicted of robbery and incarcerated in a Washington State prison, where he was housed in a mental health unit and consented to the administration of antipsychotic drugs. See id. Harper was released on parole on the condition that he participate in psychiatric treatment, but later returned to prison after his parole was revoked. See id. at 214. At that time, Harper was sent to a special offender center, where he was diagnosed with a manic-depressive disorder. See id. Harper initially voluntarily consented to treatment, including the administration of antipsychotic medications, but later refused to continue taking the medications. See id. Harper's treating physician sought to medicate Harper over his objection pursuant to an institutional policy that had been developed in part in response to the Supreme Court's decision in Vitek. See Harper, 494 U.S. at 214-15.

The policy provided that, for a patient to be medicated involuntarily, a psychiatrist must determine that the patient "(1) suffers from a 'mental disorder' and (2) is 'gravely disabled' or poses a 'likelihood of serious harm' to himself, others, or their property." Id. at 215 (footnote omitted). Under the policy at issue, the patient was "entitled to a hearing before a special committee consisting of a psychiatrist, a psychologist, and the Associate Superintendent of the Center, none of whom could be, at the time of the hearing, involved in the inmate's treatment or diagnosis[,]" and was entitled to notice of the hearing, the diagnosis, the factual basis for the diagnosis, and why medication was required. Harper, 494 U.S. at 215-16. The patient was entitled to attend the hearing, present evidence, call witnesses, cross-examine, and to have the assistance of a lay advisor. Id. at 216. Following the decision of a special committee, the patient could appeal to the superintendent of the

institution within twenty-four hours and "seek judicial review of a committee decision in state court by means of a personal restraint petition or extraordinary writ." Id. at 216 (citation omitted).

After being forcibly medicated, Harper filed suit pursuant to 42 U.S.C. § 1983, alleging that the failure to provide a judicial hearing before the involuntary administration of such medication violated his due process rights. See id. at 217. Following a bench trial, the trial court ruled that, although Harper had a liberty interest in not being subjected to the involuntary administration of antipsychotic medication, the procedures set forth in the policy satisfied due process requirements. See id. at 217-18. The Supreme Court of Washington reversed and remanded, agreeing with the trial court that Harper had a liberty interest in refusing antipsychotic medications, and holding that due process required a judicial hearing and that the State was required to prove "by clear, cogent, and convincing evidence that the administration of antipsychotic medication was both necessary and effective for furthering a compelling state interest." Id. at 218 (cleaned up).

The United States Supreme Court granted *certiorari* and reversed. See id. Although the Supreme Court stated that it had "no doubt that, in addition to the liberty interest created by the State's Policy, [Harper] possesse[d] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment," the Supreme Court concluded that the Due Process Clause did not confer upon Harper a right greater than that recognized under State law. Id. at 221-22 (citations omitted). In particular, the Supreme Court disagreed with Harper's contention that the State could not override his decision to refuse antipsychotic medication unless he

was found to be incompetent and then only if a factfinder made a substituted judgment that he, if competent, would consent to such treatment. See id. at 222. The Supreme Court held that, "given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." Id. at 227.

Turning to the procedural protections required, the Supreme Court held that the administrative hearing procedures set forth in the policy comported with procedural due process requirements and that the Supreme Court of Washington erred in requiring a judicial hearing as a prerequisite for the involuntary treatment of prisoners. See id. at 228. The Supreme Court concluded that an inmate's interests are adequately protected by allowing a decision as to involuntary medication to be made by medical professionals rather than a judge. See id. at 231. The Supreme Court observed that Washington's policy provided for notice, the right to be present at an adversary hearing, and the rights to present and cross-examine witnesses at a hearing before medical professionals. See id. at 234.

The Supreme Court disagreed with Harper's contention that the policy was nevertheless deficient because it did not allow him to be represented by counsel, explaining: "It is less than crystal clear why lawyers must be available to identify possible errors in medical judgment. Given the nature of the decision to be made, we conclude that the provision of an independent lay advisor who understands the psychiatric issues involved is sufficient protection." Id. at 236 (cleaned up). In sum, the Supreme Court held that the policy was constitutionally permissible as "an accommodation between an inmate's

liberty interest in avoiding the forced administration of antipsychotic drugs and the State's interests in providing appropriate medical treatment to reduce the danger that an inmate suffering from a serious mental disorder represents to himself or others" and that the policy provided "certain essential procedural protections" required by the Due Process Clause. Id.

## *Williams*

Just over three months after the Supreme Court's decision in Harper, in Williams, 319 Md. at 509-10, 573 A.2d at 821, this Court held that the then-existing version of HG § 10-708 was unconstitutional on its face and as applied because it failed to provide adequate procedural due process protections. At the time, HG § 10-708(a) allowed a mentally ill individual in a psychiatric institution "to refuse medication used for the treatment of a mental disorder" except where the medication was "provided on the order of a physician in an emergency where the individual present[ed] a danger to the life or safety of the individual or others" or "in nonemergency situations, where the individual [was] hospitalized involuntarily or by order of a court and the medication is approved by a clinical review panel." Id. at 487, 573 A.2d at 810 (internal quotation marks omitted).

Williams had been committed to a State psychiatric institution after being adjudicated not criminally responsible for charges of attempted second-degree rape and battery. See id. at 488-89, 573 A.2d at 810-11. Williams refused to take prescribed antipsychotic medication based on a fear that the side effects would disrupt his thought processes and interfere with the exercise of his religion and ability to assist his attorney at a subsequent release hearing. See id. at 490, 573 A.2d at 811. Williams's psychiatrist

requested a review of his decision to refuse medication by a clinical review panel.  See id. at 490, 573 A.2d at 811.  Williams and his lawyer were present for part of the hearing and Williams explained his reasons for refusing the medication.  See id. at 490, 573 A.2d at 811.  The panel unanimously determined that Williams should be forcibly medicated.  See id. at 490, 573 A.2d at 811.

Williams was forcibly medicated for approximately two weeks at which time he announced his intention to obtain an *ex parte* injunction against forcible medication.  See id. at 490, 573 A.2d at 811.  The State agreed to temporarily discontinue forced medication and to convene a second clinical review panel.  See id. at 490, 573 A.2d at 811.  A second panel convened and a psychiatrist privately engaged by Williams, who had evaluated Williams during the time period between the two panel meetings, testified that Williams's decision to refuse to take the medication was rational, that he need not be forcibly medicated, and that he could be treated in a less intrusive manner.  See id. at 490-91, 573 A.2d at 811.  The second panel unanimously decided that Williams should be medicated over his objection.  See id. at 491, 573 A.2d at 812.

Thereafter, Williams filed a lawsuit alleging that forcible medication under the procedures of HG § 10-708 "violated his state and federal constitutional rights to privacy, due process, freedom of speech, thought, and religion[,]" and "sought preliminary and permanent injunctive relief to prohibit future forcible medication." Id. at 491, 573 A.2d at 812.  Williams later amended his complaint to add an equal protection claim.  See id. at 492, 573 A.2d at 812.  The State filed motions for summary judgment.  See id. at 492, 573 A.2d at 812.  Williams filed a motion for partial summary judgment on the ground that HG

§ 10-708, on its face, violated substantive and procedural due process and equal protection guarantees of both the Maryland Declaration of Rights and the Constitution of the United States. See id. at 492, 573 A.2d at 812. The circuit court denied Williams's motion and granted the State's motions, ruling that the State complied with HG § 10-708 and that its conduct under HG § 10-708 did not violate Williams's constitutional rights. See id. at 492, 573 A.2d at 812. Williams appealed, and this Court issued a writ of *certiorari* while the case was pending in the Court of Special Appeals. See id. at 492, 573 A.2d at 812.

In Williams, we discussed in detail the Supreme Court's decisions in Youngberg, Mills, and Harper, and determined that HG § 10-708, like the policy approved in Harper, implicitly recognized that an "involuntarily committed inmate has a significant constitutional liberty interest to be free from the *arbitrary* administration of antipsychotic drugs." Williams, 319 Md. at 495-508, 573 A.2d at 809-20 (emphasis in original). We explained that HG § 10-708 evidenced the General Assembly's intent "to create a justifiable expectation that the drugs will not be administered to an inmate unless he is mentally ill and a danger to himself or others." Id. at 508, 573 A.2d at 820 (footnote omitted). We concluded, though, that HG § 10-708, on its face, did not comply with the procedural due process requirements mandated by Harper because the statute did not

> require that the inmate be provided with advance notice of the proceedings before the clinical review panel. Nor does it require that the inmate have the right to be present, to present evidence, to cross-examine witnesses, to have the assistance of an advisor who understands the psychiatric issues involved, and to obtain judicial review of an adverse panel decision before its implementation.

<u>Williams</u>, 319 Md. at 509, 573 A.2d at 820-21.  The record in Williams's case demonstrated:

> Williams was given but five minutes' notice that the clinical review proceeding would be conducted.  Nor was he permitted to be present at the proceeding except to explain his reasons for refusing to take the drugs.  Neither he nor his lawyer (who was permitted to attend part of the proceedings on forty-five minutes' notice) was afforded the opportunity to present evidence or cross-examine witnesses.

<u>Id.</u> at 509, 573 A.2d at 821.

We concluded that, in light of <u>Harper</u>, HG § 10-708, on its face and as applied in Williams's case, failed to provide requisite procedural due process protections and that the circuit court should have granted Williams's motion for partial summary judgment on the basis that HG § 10-708 violated procedural due process protections guaranteed by both the State and Federal Constitutions.  <u>See</u> <u>Williams</u>, 319 Md. at 509-10, 573 A.2d at 821.  Because in its then-existing form HG § 10-708 could not "be enforced against Williams without his consent," common law principles controlled, and those principles prohibited "the non-consensual administration of drugs to a mentally competent adult under non-emergency circumstances."  <u>Id.</u> at 510, 573 A.2d at 821 (footnote omitted).

### Post-<u>Williams</u> Jurisprudence

Following our decision in <u>Williams</u>, in 1991, the Maryland General Assembly— "with input from a task force . . . comprised of representatives of both public and private providers as well as advocacy and consumer organizations"—amended HG § 10-708 to "allow[] for appropriate clinical intervention, while providing for patient safeguards and due process that the previous law lacked."  Undated Letter from the Secretary of the

Maryland Department of Health and Mental Hygiene to the President of the Senate and the Speaker of the House of Delegates at 1-2. The 1991 amendment constituted a "comprehensive redrafting" of HG § 10-708. Letter from the Attorney General of Maryland to the Governor of Maryland at 1 (May 8, 1991). The statute's newly enacted procedural safeguards included providing an individual who is subject to the proposed forcible administration of psychiatric medication the right to "advance notice" of a panel, and the right to attend the meeting of a panel, present information, and ask questions of a person presenting information to the panel, as well as the right "to be assisted by a lay advisor" at a panel. Senate Judicial Proceedings Committee, Bill Analysis, H.B. 588 (1991) at 1. After the amendment of HG § 10-708, individuals possessed the right to "appeal to" OAH, id., and the right to request representation or assistance of a lawyer or other advocate of the individual's choice. The amendment also provided "for an appeal process to the Circuit Court under the Administrative Procedure Act." Letter from the Attorney General of Maryland to the Governor of Maryland at 2 (May 8, 1991). In addition, "substantive[ly]," the amendment "require[d] the panel to make specific findings that without the medication, the person [would] require a longer period of hospitalization and [would] continue to be a danger to self and others." Senate Judicial Proceedings Committee, Bill Analysis, H.B. 588 (1991) at 1.

Since the 1991 amendment of HG § 10-708, Maryland appellate courts have considered various questions concerning the provisions of the statute, although no case has squarely addressed the issue before us now. In Beeman, 107 Md. App. at 127, 666 A.2d at 1316, the Court of Special Appeals considered whether HG § 10-708's provision of a

- 35 -

forty-eight-hour window in which to appeal to an ALJ a clinical review panel's decision to forcibly medicate a patient comported with the requirements of due process under the Fourteenth Amendment and the Maryland Declaration of Rights. The Court of Special Appeals rejected Beeman's argument that the forty-eight-hour deadline violated due process because it failed to account for competency of patients. See id. at 139-41, 666 A.2d at 1322-23. The Court of Special Appeals determined that, although the statutory provision "does not expressly take into account the patient's mental capacity to understand and exercise th[e] right of appeal[,]" "the existing procedural protections contained in the statute as a whole, in light of the presumption of competency and the availability of alternative guardianship proceedings, adequately protect the patient's constitutional liberty interests[.]" Id. at 128, 666 A.2d at 1316.

Beeman, who had been involuntarily admitted to the Center, refused to take prescribed medication. See id. at 128-29, 666 A.2d at 1317. A clinical review panel met and approved the use of forced medication for a period not to exceed ninety days. See id. at 130, 666 A.2d at 1317. Two days later, Beeman received written notice of the panel's decision and met with a rights advisor, who advised her of her statutory right to appeal within forty-eight hours. See id. at 130, 666 A.2d at 1318. Beeman let the forty-eight-hour deadline elapse without appealing. See id. at 131, 666 A.2d at 1318. The day after the deadline expired, medication was administered to Beeman. See id. at 131, 666 A.2d at 1318.

Approximately thirty hours after the statutory deadline, Beeman delivered a handwritten letter to Center staff indicating that she wanted to appeal the panel's decision.

See id. at 131, 666 A.2d at 1318. The Department, which operates the Center, moved to dismiss the appeal as untimely. See id. at 131, 666 A.2d at 1318. An ALJ conducted an evidentiary hearing on the motion, at which Beeman was represented by counsel. See id. at 131, 666 A.2d at 1318. The ALJ issued a written decision and order dismissing Beeman's appeal, finding that the forty-eight-hour deadline for requesting an appeal of a panel decision under HG § 10-708 was constitutional and had not been applied to Beeman in an unconstitutional manner. See id. at 131, 666 A.2d at 1318. Beeman sought judicial review and a circuit court affirmed the ALJ's decision. See id. at 132, 666 A.2d at 1318-19.

Beeman appealed and the Court of Special Appeals affirmed. See id. at 127-28, 666 A.2d at 1316. The Court of Special Appeals first concluded, as a substantive matter, that Beeman had "a significant constitutional liberty interest in being free from the arbitrary and capricious administration of" antipsychotic drugs. Id. at 142, 666 A.2d at 1323 (citations omitted). The Court next considered whether the existing statutory procedural safeguards adequately protected Beeman, noting that "due process is flexible and calls only for such procedural protections as the particular situation demands." Id. at 142, 666 A.2d at 1324 (cleaned up). In doing so, the Court utilized the balancing test formulated by the Supreme Court in Mathews, 424 U.S. at 334-35, for evaluating procedural due process questions (which the parties agreed was to be used):

> Our prior decisions indicate that identification of the specific dictates of due
> process generally requires consideration of three distinct factors: First, the
> private interest that will be affected by the official action; second, the risk of
> an erroneous deprivation of such interest through the procedures used, and
> the probable value, if any, of additional or substitute procedural safeguards;

and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Id. at 142-43, 666 A.2d at 1324 (quoting Mathews, 424 U.S. at 334-35). As to the first factor, the nature of the private interest affected, the Court stated that Beeman's interest was significant, but concluded that "the governmental interest in providing [Beeman] with the mental health care that she required must also be considered alongside [her] interest in being free from arbitrary and capricious government action." Id. at 143, 666 A.2d at 1324.

As to the second factor, the risk of erroneous deprivation, the Court determined that HG § 10-708 "satisfies constitutional due process requirements" by providing numerous procedural protections and safeguards, including, among other things, that

> [o]nce a decision has been made by the panel to medicate, . . . it must be documented with notice given to the patient of his or her right to request a hearing . . . , his or her right to counsel, and the name, address, and telephone number of the State protection and advocacy agency and the Lawyer referral service.

Id. at 144-45, 666 A.2d at 1324-25 (citations omitted). The Court stated that Maryland law "presumes that adults are competent to make their own informed decisions" and that the presumption "does not disappear upon an involuntary admission to a mental health facility for psychiatric treatment, absent a proper determination otherwise." Id. at 146, 666 A.2d at 1325 (citations omitted). The Court concluded that, when the forty-eight-hour appeal deadline of HG § 10-708 was

> analyzed in *pari materia* with the rest of the statute, as well as the presumption of competency, the risk of an erroneous deprivation of [Beeman]'s right to be free from the arbitrary and capricious administration of antipsychotic medications within the existing procedural protections [was] not so great as to warrant [granting the relief that Beeman sought].

Id. at 147, 666 A.2d at 1326.[6]

In Kelly, 397 Md. at 401-02, 918 A.2d at 471-72, this Court held that HG § 10-708(g) "requires the State to prove that an individual, because of his mental illness, is dangerous to himself or others within a state institution before it may forcibly administer medication." Kelly, who had been charged with two counts of murder and other crimes, was found by the trial court to be not competent to stand trial. See id. at 402, 404, 918 A.2d at 472-73. The trial court presumed that Kelly was dangerous to himself or others and committed him to Clifton T. Perkins Hospital. See id. at 404-05, 918 A.2d at 473. While confined at Perkins, Kelly refused to take antipsychotic medications prescribed for him. See id. at 405, 918 A.2d at 473-74. A clinical review panel was convened and approved the forced administration of medication. See id. at 405, 918 A.2d at 474. Kelly appealed and an ALJ concluded that Kelly should be involuntarily medicated. See id. at 406, 413, 918 A.2d at 474, 478. Kelly sought judicial review and a circuit court reversed the ALJ's decision, concluding that, for purposes of forcible administration of medication, HG § 10-708(g) "requires evidence that an involuntarily committed individual is a danger to himself or others in the context of his confinement within the facility in which he has been committed, rather than to society upon release." Id. at 414-15, 918 A.2d at 479 (footnote omitted). The Department noted an appeal and this Court, on our own initiative,

---

[6]As to the third factor, the Court of Special Appeals concluded that the record in the case was "completely devoid of any empirical data that could be used to formulate an argument one way or the other on the final factor, i.e., the fiscal or administrative burdens that the additional procedures requested by [Beeman] would place upon the State." Beeman, 107 Md. App. at 143-44, 666 A.2d at 1324 (footnote omitted).

issued a writ of *certiorari* prior to any proceedings in the Court of Special Appeals. See id. at 416, 918 A.2d at 480. We held that HG § 10-708(g) "requires the State to prove that an individual involuntarily committed to a state institution is, because of his mental illness, dangerous to himself or others in the context of his confinement within the institution before it may forcibly administer medication." Id. at 416, 918 A.2d at 480.

Effective October 1, 2014, HG § 10-708(g) was amended to permit "the authorization of involuntary medication in some circumstances without a showing of dangerousness to the individual or others within the facility." Allmond, 448 Md. at 615, 141 A.3d at 70 (citation omitted). After that, in Allmond, id. at 596, 141 A.3d at 59, we addressed whether "on its face, HG § 10-708(g) violates the Maryland Declaration of Rights in permitting forced medication without a showing that [a patient] is dangerous to himself or others within the facility." We held that, although the statute is not facially unconstitutional, "authorization for involuntary medication may only be constitutionally carried out when there exists an 'overriding justification,' such as a need to render a pretrial detainee competent for trial." Id. at 596, 141 A.3d at 59.

In considering Allmond's contention that HG § 10-708(g) was contrary to the Maryland Declaration of Rights, we reiterated that substantive due process "refers to the principle that there are certain liberties protected by the due process clauses from legislative restrictions, regardless of the procedures provided, unless those restrictions are narrowly tailored to satisfy an important government interest" and that "[o]ne such liberty is avoiding the unwanted administration of antipsychotic drugs." Id. at 609-10, 141 A.3d at 67

(cleaned up).  We reviewed Harper, Riggins v. Nevada, 504 U.S. 127 (1992), and Sell v.

United States, 539 U.S. 166 (2003), and distilled the following principles from those cases:

> There is a substantive due process right to refuse psychotropic drugs.  For convicted prisoners, a reasonableness test applies.  For pretrial detainees, the medication must be necessary to accomplish an essential state policy.  In any event, there must be a finding of overriding justification and a determination of medical appropriateness.  Overriding justifications include preventing danger to the detainee's self or others in the facility and making a detainee competent to stand trial for a serious crime.

Allmond, 448 Md. at 610-13, 141 A.3d at 68-69 (cleaned up).

As to HG § 10-708(g), we stated that a facial challenge to its provisions could

"succeed only if there is no set of circumstances under which these provisions (and no

others) authorize involuntary medication of an individual and doing so is constitutional."

Id. at 616, 141 A.3d at 71 (footnote omitted).  Thus, if we could "imagine any set of

circumstances under which these subparagraphs can be constitutionally applied, then the

challenge fails."  Id. at 616, 141 A.3d at 71.  Nonetheless, we determined that the provisions

of HG § 10-708(g) can be applied constitutionally "only if they are applied under the

procedural due process standards set forth in *Harper*, *Riggins*, and *Sell*."  Allmond, 448

Md. at 617, 141 A.3d at 72.

Most recently, in Johnson, 470 Md. at 656, 236 A.3d at 578, we held "that Maryland

law authorizes involuntary medication to restore an individual's competence to stand trial,

and does not violate separation of powers by entrusting an ALJ with the power to order

such medication, subject to judicial review."  We stated, though, that before the Department

"may infringe on a person's significant liberty interest in avoiding unwanted psychotropic

drugs, the Department and an ALJ must comply with rigorous requirements of due

process." Id. at 656, 236 A.3d at 578. We concluded that the Department and the ALJ complied with the requirements of due process in Johnson's case and thus determined that there was no error in the order authorizing Johnson's involuntary medication. See id. at 656, 236 A.3d at 578.

Applying the three factors set forth in Mathews, 424 U.S. at 334-35, we held that the administrative process set forth in HG § 10-708 afforded Johnson procedural due process. See Johnson, 470 Md. at 687, 236 A.3d at 596. Specifically, we concluded "that, while [] Johnson ha[d] a significant liberty interest in avoiding unwanted medication, the administrative process set forth in HG § 10-708 adequately mitigated the risk of erroneous deprivation of that interest." Id. at 687, 236 A.3d at 596. We determined that procedural safeguards set forth in HG § 10-708 and related regulations provided "further confidence that the outcome of [] Johnson's hearing before the ALJ was no less reliable than it would have been if it had been held in the criminal trial court." Id. at 692, 236 A.3d at 599-600. Notably, in discussing the procedural safeguards, we stated that

> Johnson had the right to request representation at that hearing by a lawyer or other advocate of his choice, [HG] § 10-708(i)(4)(ii), and in fact, [] Johnson was represented before the ALJ by very able counsel at no cost to him, who continued to represent him before the circuit court, as well as before this Court (along with equally able co-counsel).

Johnson, 470 Md. at 692-93, 236 A.3d at 600.

**Analysis**

To determine whether due process requires an ALJ to conduct an on-the-record waiver colloquy to properly safeguard a patient's right to counsel under HG § 10-708(i)(4)(ii), we must first assess whether there exists a right to counsel under HG § 10-

708(i)(4)(ii).[7]  Although construing HG § 10-708(i)(4)(ii) is an issue of first impression, established principles of statutory construction guide our way.  Our goal in statutory construction is to "ascertain and effectuate the actual intent of the General Assembly." Johnson, 470 Md. at 674, 236 A.3d at 588 (citation omitted).  We begin "by examining the plain meaning of the statutory language[,]" and, if the language "is unambiguous and clearly consistent with the statute's apparent purpose," our inquiry generally ceases at that point and "we apply the statute as written[.]"  Id. at 674, 236 A.3d at 588-89 (citations omitted).  If, however, "the statutory language is subject to more than one reasonable interpretation, or its meaning is not clear when considered in conjunction with other statutory provisions, we may glean the legislative intent from external sources[,]" which involves a review of the legislative history of the statute.  Id. at 674, 236 A.3d at 589 (cleaned up).  We presume that the General Assembly intends statutes "to operate as a consistent and harmonious body of law, and, thus, we seek to reconcile and harmonize the parts of a statute, to the extent possible consistent with the statute's object and scope."  Id. at 674-75, 236 A.3d at 589 (cleaned up).  And, we must give a statute "a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense."  Id. at 675, 236 A.3d at 589 (cleaned up).

HG § 10-708(i)(4), the provision at issue here, provides in its entirety:

If a panel approves the administration of medication, the decision shall contain:

---

[7]Because Mercer does not contend that a constitutional right to counsel exists, our analysis involves only whether there is a statutory right to counsel.

- 43 -

(i) Notice of the right to request a hearing under subsection (l) of this section;

(ii) The right to request representation or assistance of a lawyer or other advocate of the individual's choice; and

(iii) The name, address, and telephone number of the designated State protection and advocacy agency and the Lawyer Referral Service.

Under the plain language of HG § 10-708(i)(4)(ii), a right to counsel exists upon an individual's request for counsel. In other words, the plain language of HG § 10-708(i)(4)(ii) establishes that the right to counsel exists where an individual requests counsel. In this regard, we agree with the Court of Special Appeals to the extent that it determined that, "under the plain language of HG § 10-708, patients have the right to the assistance of counsel only if they first request the assistance of counsel." Mercer, 249 Md. App. at 162, 245 A.3d at 94. Upon an individual's request, the right to counsel attaches, and the State has agreed to furnish counsel at no cost to the individual.

In fact, HG § 10-708(i)(4) utilizes the same language—"right to request"—to establish an individual's right to a hearing and right to counsel at the hearing. HG § 10-708(i)(4)(i) and (ii). Comparing the manner in which the statute describes an individual's right to request a hearing to the language setting forth the right to request counsel leads to the determination that an individual has upon request both the right to a hearing and the right to counsel. Specifically, HG § 10-708(i)(4)(i) employs the identical language of "right to request" to describe the right to a hearing as HG § 10-708(i)(4)(ii) does to describe the right to counsel. It is undisputed that an individual's right to request a hearing—once invoked—confers the right to an appeal of a panel's decision. That HG § 10-708(i)(4)(ii)

- 44 -

employs the same language as HG § 10-708(i)(4)(i) concerning the "right to request" leads to the conclusion that, unless waived, once an individual invokes the right to request counsel, the individual indeed has the right to the assistance of counsel.

The dilemma in this case, though, is that Mercer requested counsel at the administrative hearing after initially declining to request legal representation on the Appeal Request Form. No one could seriously contend that, had Mercer originally checked the line on the Appeal Request Form indicating that he wanted legal representation at the hearing, his request would have been denied. The Center's contention that no right to counsel exists under HG § 10-708 because the onus is on an individual to make a request presents more a matter of semantics than a meaningful challenge to the view that, by its plain language, the statute confers the right to counsel upon request. This conclusion is consistent with the Court of Special Appeals's determination that the right to assistance of counsel exists upon request but is not a right that exists automatically. See Mercer, 249 Md. App. at 161-62, 245 A.3d at 95-96.

We part ways, however, with the Court of Special Appeals's determination that HG § 10-708 implicitly sets forth a time limit for the exercise of the right to request counsel and that a request for counsel at an administrative hearing is untimely. See id. at 166-67, 245 A.3d at 98. To be sure, HG § 10-708 calls for prompt action when the issue of forcibly administering medication arises. To accept, however, the position that a request for counsel to be timely must be made at some point before the administrative hearing would require us to ignore that the plain language of HG § 10-708 imposes no such requirement. On brief, the Center suggests that the request for counsel is subject to the same time

limitation—the forty-eight-hour deadline—as the time limitation under the statute for an individual's right to request a hearing. But, unlike with the forty-eight-hour deadline for requesting a hearing, HG § 10-708 imposes no deadline or timeframe in which an individual is required to request counsel. We decline to read a time restriction into HG § 10-708 and to impose a requirement that, to be effective, a request for counsel must be made at some unidentified point prior to the hearing.

Although the plain language of the statute is clear and our analysis could end here, the legislative history of the 1991 amendment to HG § 10-708 supports the conclusion that an individual has a right to counsel once the individual requests counsel and that the statutory language imposes no time limit on the exercise of the right. With the 1991 amendment, the General Assembly sought to revise HG § 10-708 to afford procedural due process to individuals subject to forcible medication. See Beeman, 107 Md. App. at 138, 666 A.2d at 1321. In Williams, 319 Md. at 509, 503-04, 573 A.2d at 820-21, 818, we provided guidance as to the procedural due process rights to be afforded an individual facing the proposed forced administration of medication, while acknowledging the Supreme Court's position in Harper that provision of counsel at a panel meeting is not required. In the 1991 amendment of HG § 10-708, the General Assembly corrected procedural due process deficiencies that we identified in Williams. See HG § 10-708(d) and (e). However, the General Assembly did not stop there. The General Assembly provided for greater protections than those discussed in Williams.

With the 1991 amendment, the General Assembly granted individuals the right to an administrative hearing, see HG § 10-708(l)(1), conferred a right to judicial review in a

circuit court, see HG § 10-708(m)(1), and provided a right to request counsel or the assistance of an advocate at the administrative hearing, see HG § 10-708(i)(4)(ii).[8] The legislative history of HG § 10-708 demonstrates that the General Assembly "intended to put tight reins on the forced medication of involuntarily committed patients and not to allow the kind of regime portrayed in *One Flew Over The Cuckoo's Nest*." Kelly, 397 Md. at 447, 918 A.2d at 498-99 (Wilner, J., concurring). It would not be consistent with this intent to conclude that the General Assembly implicitly embedded a time deadline in the statute for an individual's request for counsel. The purpose of the 1991 amendment of HG § 10-708 was to increase procedural due process protections available to individuals subject to forced medication, including by providing the right to counsel at an administrative hearing upon request, not to deny the right to counsel on the basis of an unexpressed time limitation for making the request.

---

[8]The Center draws our attention to a letter in which the Managing Attorney of the Legal Aid Bureau, Inc. recommended that the part of the bill that would become HG § 10-708(i)(4)(ii) "be corrected to read, 'or other advocate OF [on] the individual's choice.'" Letter from the Managing Attorney of the Legal Aid Bureau, Inc. to the Chair of the House Judiciary Committee at 2 (Mar. 7, 1991) (brackets and underlining in original). The Center asserts that the Managing Attorney recommended adding language concerning the right to be represented by an advocate other than a lawyer, seemingly implying that the inclusion of language concerning the assistance of either an attorney or a lay advocate indicates that there is no right to counsel. A review of the letter, however, demonstrates that the Managing Attorney merely recommended a correction to language concerning representation by an attorney or an advocate that was already part of the bill at the time. Regardless, far from supporting the position that a right to counsel does not exist, as argued by the Center, the circumstance that HG § 10-708(i)(4)(ii) provides an individual with both the right to request legal representation and the right to request representation by an advocate of the person's choice does not undermine the existence of either right.

Indeed, the General Assembly has recognized that the 1991 amendment of HG § 10-708 provided a right to counsel upon request for individuals appealing a panel decision and, in doing so, has not referenced the existence of a time limit before the hearing within which the request must be made. Without mentioning a deadline for making a request for counsel, in the Fiscal Note accompanying the bill that would become the 1991 amendment, the General Assembly acknowledged that "the Department estimate[d] the cost of providing legal representation (under contract) for the individuals appealing the panel's decision at approximately $53,000." H.B. 588 (1991) Fiscal Note at 2. And, more recently, the Fiscal and Policy Notes accompanying bills that became a 2018 amendment to HG § 10-708 expressly stated:

> An individual may request an administrative hearing to appeal the panel's decision by filing a request for hearing with the chief executive officer of the facility or the chief executive officer's designee within 48 hours of receipt of the decision of the panel. **An individual has a right to legal representation at the hearing.** Hearings are conducted before [OAH], and an initial panel decision authorizing the administration of medication must be stayed for 48 hours or until the issuance of OAH's decision, if the individual requested a hearing.

S.B. 361 (2018) Fiscal Note at 4; H.B. 202 (2018) Fiscal Note at 4 (emphasis added). It is evident that in 1991, in amending HG § 10-708, the General Assembly sought to safeguard an individual's liberty interest in being free from the arbitrary forced administration of medication by providing due process protections, including the right to counsel upon request. To determine that the right to request counsel means less than the statute states, or that a deadline for making the request exists (which is not set forth in the statute), would undermine the General Assembly's intent.

- 48 -

We are aware that the Center argues that the Department's funding of counsel for individuals through the creation of the Legal Assistance Program is not evidence of the existence of a right to counsel because the program arose from a lawsuit brought by residents of a Maryland facility and results from a consent decree with the State as opposed to a decision by the General Assembly. This argument, however, overlooks the circumstance that, where a panel approves forced medication, the statute requires a panel to inform an individual in its written decision of the right to request counsel, see HG § 10-708(i)(4)(ii), and also requires the panel to provide information to facilitate an individual's ability to access counsel, see HG § 10-708(i)(4)(iii). In addition, the Department has freely acknowledged that it provides counsel at no cost to individuals who are facing the forcible administration of medication under the statute. Indeed, the Court of Special Appeals observed that if a panel approves forced medication, among other things, an individual must be informed of "the name, address, and telephone number of the designated State protection and advocacy agency and the Lawyer Referral Service[,]" and that the State has agreed to supply representation at no cost. Mercer, 249 Md. App. at 162, 245 A.3d at 95 (cleaned up).

In addition, we are equally cognizant of the argument that a right to counsel does not exist under HG § 10-708 because, had the General Assembly intended to create such a right, it would have done so as it did in statutes such as the one concerning the right to counsel in Child in Need of Assistance ("CINA") cases, Md. Code Ann., Cts. & Jud. Proc. (2006, 2020 Repl. Vol.) ("CJ") § 3-813, and the statute concerning the right to counsel in the Uniform Postconviction Procedure Act, Md. Code Ann., Crim. Proc. (2001, 2018 Repl.

- 49 -

Vol.) § 7-108. These statutes provide an automatic right to counsel that is not contingent on an individual's request for counsel. It would be both illogical and inconsistent with the plain language and legislative history of HG § 10-708, however, to not recognize that the statute provides an individual subject to the forced medication the right to counsel upon request because the statutes concerning CINA and postconviction proceedings provide an automatic right to counsel to others under different circumstances. The decision not to use the same standard in HG § 10-708 that is used in other statutes would be a weak reed on which to conclude that the General Assembly did not intend to create a right to counsel upon request under HG § 10-708 for individuals subject to forced medication.[9] Cf. Anne Arundel Cty. v. Reeves, 474 Md. 46, 71, 252 A.3d 921, 935 (2021).

Having determined that a right to counsel exists upon request under HG § 10-708(i)(4)(ii), we now consider whether due process requires an on-the-record colloquy to determine a waiver of the right. Mercer contends that because the Appeal Request Form does not notify an individual that a failure to request counsel waives the right altogether, the Appeal Request Form did not constitute an effective waiver. Mercer argues that, because a significant private liberty interest is at stake, an on-the-record waiver colloquy

---

[9]Similarly, we fail to see how the circumstance that an individual may be forcibly medicated in an emergency without the assistance of counsel alters the circumstance that in nonemergency situations, HG § 10-708(i)(4)(ii) provides the right to the assistance of counsel upon request. This would be, as the saying goes, like "comparing apples to oranges." So different are the circumstances that, in addition to providing a right to counsel, in nonemergency situations, the statute guards against forced medication after the panel's decision for forty-eight hours if no appeal is taken, see HG § 10-708(l)(3), and in the event of an appeal, until the ALJ's decision is issued seven days after the panel's decision, see HG § 10-708(l)(4), and authorizes forced medication for no longer than ninety days without a new panel being convened, see HG § 10-708(n)(1).

is required. The Center asserts that, because any right to counsel that exists under the statute is not constitutional in nature, a waiver of the right, if any, need not be knowing and voluntary and an on-the-record waiver colloquy is not required. Although we agree with the Center that an on-the-record advisement and waiver colloquy are not required to determine a waiver of the right to request counsel under HG § 10-708, we conclude that due process requires, at a minimum, verification that an individual was properly advised and knowingly and voluntarily waived the right to request counsel and elected to proceed unrepresented.

Using the analytical framework set forth by the Supreme Court in Mathews, 424 U.S. at 334-35, the Court of Special Appeals determined that the ALJ did not deprive Mercer of procedural due process by not postponing the administrative hearing for him to obtain counsel. See Mercer, 249 Md. App. at 172, 245 A.3d at 101. We disagree. Aside from the circumstance that Mercer did not request a postponement of the hearing and there was no information before the ALJ indicating that an attorney was unavailable at the time of the hearing, the Court of Special Appeals's determination was based on the faulty conclusion that the ALJ had the discretion to deny Mercer's request for counsel because HG § 10-708 implicitly provided Mercer only with the right to request counsel within a certain timeframe, *i.e.*, according to the Court of Special Appeals, Mercer had the right to "timely request" counsel and failed to do so. Mercer, 249 Md. App. at 161, 245 A.3d at 94.

Our application of the Mathews test leads to a different result. As to the first factor of the test, it is well established that a person has a constitutionally protected liberty interest

in avoiding the forced administration of psychiatric medication and in being free from the arbitrary administration of such medication. See Williams, 319 Md. at 494-95, 508, 573 A.2d at 813, 820. Moreover, in 1991, when the General Assembly amended HG § 10-708, it conferred upon individuals subject to forced medication a protected interest in accordance with the due process procedures set forth in the statute, which include the right to request counsel. See Kelly, 397 Md. at 431, 918 A.2d at 489. Clearly, as we determined in Williams, 319 Md. at 508, 573 A.2d at 820, there is a significant constitutionally protected liberty interest at stake; in addition, the statute itself provides a right to counsel upon request.

Under the second factor, we examine the risk of the erroneous deprivation of the right due to procedures already in existence, and the probable value, if any, of additional proposed procedural safeguards. See Mathews, 424 U.S. at 335. In this case, the risk of an erroneous deprivation of both the right to be free from the arbitrary forced administration of medication and the right to counsel is high because use of the Appeal Request Form did not serve as a sufficient procedure to verify an individual's waiver of the right to counsel upon request.[10] Nowhere did the Appeal Request Form advise Mercer that by checking the line that he chose, he would be relinquishing the right to make a

---

[10]On brief, the Center contends that "the lay advisor, not a piece of paper is designated by statute as primarily being responsible for informing an individual of his rights" and that the form is "an additional tool[.]" To be sure, HG § 10-708(k)(1) and (2) provide that a lay advisor shall inform an individual of the right to appeal a decision of a panel under subsection (l) and ensure that the individual has access to a telephone. The statute imposes no obligation on a lay advisor, however, to inform an individual of the right to request representation or the assistance of a lawyer under HG § 10-708(i)(4)(ii).

request for the assistance of counsel at the time of the administrative hearing, *i.e.*, the form did not advise that to be considered timely the request for counsel was required to have been made before the hearing or at any other specified time. In other words, the Appeal Request Form did not advise Mercer that his right to request legal representation, or the ability to change his mind with regard to declining counsel, for that matter, was subject to any time limit.

Next, under the existing procedures, after declining the right to request legal representation on the Appeal Request Form, Mercer received a Notice of Hearing advising that he had the right to request representation or the assistance of a lawyer or other advocate. Mercer received the Notice of Hearing on August 13, 2019, six days after he completed the Appeal Request Form and three days before the hearing of August 16, 2019, advising that he had the right to the assistance of counsel. This likely contributed to Mercer's belief that he would be able to request counsel at the administrative hearing. In other words, a person in Mercer's situation could reasonably believe that he would be able (notwithstanding his earlier declination) to request legal representation at the hearing. Given the information provided in the Notice of Hearing about the right to request the assistance of counsel, the Appeal Request Form did not—and could not—operate as a waiver of the right to request legal representation or even an effective declination of the right in this instance. Allowing the existing procedure, *i.e.*, use of the Appeal Request Form presented by a lay advisor and the current Notice of Hearing form, to suffice as a method of determining an individual's waiver or declination of the right to request counsel would be a clear violation of the procedural due process protections that the General

- 53 -

Assembly sought to provide in HG § 10-708.

Further, we observe that in evaluating the second factor of the <u>Mathews</u> test, citing <u>Harper</u>, 494 U.S. at 236, the Court of Special Appeals stated that Mercer "did not have a due process right to counsel (as opposed to a lay advisor) at the hearing before the ALJ." <u>Mercer</u>, 249 Md. App. at 169, 245 A.3d at 99. In <u>Harper</u>, 494 U.S. at 236, 215, however, the Supreme Court determined that an individual did not have a due process right to counsel at a special committee that was convened to determine the approval of the forced administration of medication in the first instance. In <u>Harper</u>, <u>id.</u> at 215, the Washington State policy at issue provided for an initial decision concerning forced medication by a special committee composed of medical professionals, which would be the equivalent of a panel meeting under HG § 10-708, and then an appeal to an institution's superintendent.

In evaluating the second prong of the <u>Mathews</u> test, the Court of Special Appeals cited <u>Harper</u>, implying that the Supreme Court's determination that no right to counsel existed at the special committee (a panel of medical professionals) would be the equivalent of a determination that there is no procedural due process right to counsel in an appeal before an ALJ at an administrative hearing. After stating that Mercer did not have a due process right to counsel as opposed to a lay advocate and citing <u>Harper</u>, the Court of Special Appeals stated: "Thus, the question in this case was whether due process requires the ALJ to conduct an on-the-record colloquy as an additional safeguard to ensure that a patient has knowingly and voluntarily declined to exercise the statutory right to request counsel." <u>Mercer</u>, 249 Md. App. at 170, 245 A.3d at 99 (footnote omitted). In discussing the second prong of the <u>Mathews</u> test, the Court of Special Appeals appeared to credit HG § 10-708

- 54 -

with providing no more than a right to request counsel rather than a statutory right to counsel that exists once a request is made. See Mercer, 249 Md. App. at 169-70, 245 A.3d at 99-100. As such, the Court of Special Appeals gave little weight to the second factor of the test which involved assessing "the risk of an erroneous deprivation of Mercer's constitutional interests through the existing procedures" and the probable value that "the procedures proposed by Mercer would have in minimizing the risk of an erroneous deprivation of his rights." Id. at 169, 245 A.3d at 99 (cleaned up).

Insofar as the third factor, the State's interest, is concerned, the parties take different positions as to the significance to be accorded the State's interest in ensuring the health and safety of patients and staff in a facility. The Center contends that the administrative hearing could not have been postponed because the State has a strong interest in maintaining the health and safety of those in the facility—in this case, Mercer's health and safety in particular—and, as such, it is essential that the strict timeframes set forth in HG § 10-708 be adhered to. Mercer argues that, although the State has an interest in adhering to the deadlines set forth in the statute to reduce the risk of danger to patients and others, the Center has the authority to forcibly medicate a patient in an emergency.[11]

From our perspective, in this case, the State's interest is diminished by the circumstance that, as Mercer points out on brief, his hearing was inexplicably delayed past the seven-day timeframe set forth in HG § 10-708(l)(4). HG § 10-708(l)(4) provides that

---

[11]In fact, in this case, on August 14, 2019, two days prior to the administrative hearing, Mercer was forcibly medicated on that date under the emergency provision of the statute.

OAH shall conduct an administrative hearing and issue a decision within seven days of the panel's decision. Here, the panel's written decision was issued on August 5, 2019, and the hearing occurred on August 16, 2019, eleven days after the panel's decision. No explanation for the delay has been given by the Center.[12] The ALJ did not address this circumstance in failing to find good cause to postpone the hearing upon Mercer's request for counsel and indeed did not address the unexplained delay at any point during the hearing. The unaccounted-for delay of four days past the statutory timeframe of seven days to complete the appeal undermines the claim by the Center that the State's interest in ensuring Mercer's health and safety and that of others in the facility required strict adherence to the deadlines set forth in the statute. Because the record does not disclose good cause for the delay in conducting the administrative hearing, and indeed no explanation whatsoever has been offered by the Center, we cannot say that Mercer's right to counsel upon request must give way to the State's interest in this case.[13] After careful

---

[12]A review of the record, though, demonstrates that the Notification of Appeal dated August 12, 2019 that was admitted into evidence at the administrative hearing indicates that the Chief Executive Officer of the Center notified the ALJ of Mercer's appeal on August 12, 2019, seven days after the date of the panel's decision. The next day, on August 13, 2019, OAH issued a Notice of Hearing scheduling an administrative hearing for August 16, 2019—eleven days after the date of the panel's decision. HG § 10-708(l)(2) provides that within twenty-four hours of receipt of a request for hearing, the chief executive officer of a facility or a designee shall forward the request to OAH. That apparently did not happen in this case.

[13]In addition, as in <u>Beeman</u>, 107 Md. App. at 143-44, 666 A.2d at 1324, the record in this case is devoid of information or data that would demonstrate the cost or fiscal burden of providing additional measures to safeguard the constitutionally protected liberty interest at stake. Given that the State has already agreed to provide counsel at no cost to an individual at an administrative hearing, an assessment of the fiscal or administrative burden that the requested procedures would place on the State would appear to result in a finding

balancing of the <u>Mathews</u> factors, we conclude that, given the significant constitutionally protected liberty interest at stake, the apparent inadequacy of the current procedures to avoid erroneous deprivation of the interest, and the Center's unexplained delay in taking action in furtherance of the State's interest, the ALJ deprived Mercer of procedural due process in declining his request for counsel at the administrative hearing.

We next examine the procedure for advisement and waiver or declination of the right to request counsel necessary to avoid erroneous deprivation of the significant liberty interest at stake. By way of comparison, we observe that Maryland Rule 4-215 sets forth the specific circumstances under which a criminal defendant waives a right to counsel. Under Maryland Rule 4-215(b), the circuit court may not accept as valid a defendant's purported intent to waive counsel unless and until there is "an examination of the defendant on the record conducted by the court, the State's Attorney, or both, [and] the court determines and announces on the record that the defendant is knowingly and voluntarily waiving the right to counsel."

In this case, the Center argues that because HG § 10-708 involves a statutory and not a constitutional right to counsel, a waiver need not be knowing and voluntary within the meaning of our criminal case law and no on-the-record waiver colloquy is required. Although we agree that an on-the-record waiver colloquy of the type used in a criminal case involving the constitutional right to counsel is not necessarily required, we conclude

---

of no increased cost or fiscal burden on the State at least with respect to the provision of counsel.

that there must be verification that an individual has knowingly and voluntarily waived the right to request counsel afforded under HG § 10-708.

Case law on waiver of other statutory rights to counsel is relevant. For instance, in In re Alijah Q., 195 Md. App. 491, 493, 522, 7 A.3d 106, 107, 124 (2010), a CINA case, the Court of Special Appeals held that, "in the absence of any affirmative indication by [a parent] that she assented to the discharge of her counsel, it was incumbent on the judge to make some attempt to verify that, moments before the hearing was to begin, [the parent] wanted to discharge her lawyer." (Citations omitted). In Alijah Q, id. at 493, 7 A.3d at 107, the parent of a child in a CINA case appealed from a determination at an exceptions hearing before a trial court. The parent, who was indigent and thus entitled to counsel under CJ § 3-813(a), had appeared with counsel at an earlier hearing. See id. at 507, 495, 7 A.3d at 115, 108. At the exceptions hearing, counsel for the parent indicated that the parent had discharged her and asked to be excused. See id. at 498-99, 7 A.3d at 110. The circuit court asked whether anyone objected, and after no one responded, granted the attorney's request and proceeded with the hearing, during which the parent was unrepresented. See id. at 499-500, 7 A.3d at 110-11.

On appeal, the parent argued that the court erred in discharging her counsel without conducting a waiver of counsel inquiry, and that the proper procedure was for the court to conduct the same inquiry required for waiver of counsel by a party in a delinquency case under Maryland Rule 11-106(b)(1), which requires an on-the-record colloquy concerning the party's comprehension of the waiver of counsel. Id. at 507, 7 A.3d at 115. Although the Court of Special Appeals determined that the waiver of counsel provision applicable in

a delinquency case did not apply, it nevertheless determined that the statutory right to counsel guaranteed the parent some meaningful protection and that the circuit court was required to attempt to verify that the parent indeed wanted to discharge counsel and proceed unrepresented. See id. at 522, 7 A.3d at 124. The Court of Special Appeals acknowledged "that a personal, voluntary, knowing, and intelligent waiver colloquy is ordinarily required only in proceedings that involve fundamental rights or could result in confinement" but pointed out that "a CINA proceeding implicates a 'fundamental' right; a CINA case may alter the parent-child relationship and it may lead to the termination of parental rights." Id. at 523, 7 A.3d at 124. The Court of Special Appeals stopped short, however, of concluding that under Maryland Rule 11-106 a knowing and voluntary waiver of counsel is required in CINA cases. See id. at 515, 7 A.3d at 120.

Here, given the significant constitutionally protected liberty interest at stake where the forced administration of psychiatric medication is concerned, the high risk of erroneous deprivation of the interest under existing procedures, and the lack of an established burden on the State's interest if additional safeguards were provided, we conclude that, at a minimum, verification that an individual wants to waive the right to request counsel under HG § 10-708 is required and, further, such verification must demonstrate that the waiver is knowing and voluntary. Because an individual subject to forced medication under HG § 10-708(b)(2) is necessarily hospitalized involuntarily or committed for treatment by order of a court, determining that the waiver of the right to counsel is the product of the individual's free will and that the individual has been advised of the nature of the right and the consequences of waiving the right is paramount. Unlike a parent in a CINA case, who

may not be suffering from any illness, individuals in this situation have necessarily been diagnosed with a mental disorder, <u>see</u> HG § 10-708(g)(1), and may not be able to effectively self-advocate. In <u>Vitek</u>, 445 U.S. at 493-94, the Supreme Court recognized that while a conviction "extinguish[es] a defendant's right to freedom from confinement[,]" that loss of liberty does not automatically empower "the State to classify him as mentally ill and to subject him to involuntary psychiatric treatment without affording him additional due process protections." (Citations omitted). Where, as here, the General Assembly has intervened through the enactment of a statute to accord due process protections, the protections must be respected.

That said, the strict standard of waiver requiring that a court, or in this case an ALJ, conduct a personal inquiry on the record with an individual to establish that the person has been advised of the right to request counsel and is waiving the right knowingly and of his or her own free will is not required. <u>See, e.g.</u>, <u>In re Blessen H.</u>, 392 Md. 684, 708, 898 A.2d 980, 995 (2006). However, verification that an individual's waiver of the right to request counsel is made knowingly—at a minimum, with an advisement as to the existence and nature of the right and the consequences of waiving it—and voluntarily—that the individual is waiving or declining the right to request counsel of the individual's own free will—is necessary to avoid an erroneous deprivation of the constitutionally protected liberty interest of the right to be free from the arbitrary forced administration of psychiatric medication. That did not occur here.

The Appeal Request Form in no way advised Mercer that checking a line declining legal representation was the equivalent of the waiver of the right to request counsel. Nor

did the form advise Mercer of the benefits of having an attorney at the hearing, such as that an attorney could assist by calling witnesses, cross-examining witnesses, and presenting his case. The form did not advise that, once Mercer declined legal representation, he could not change his mind and later request representation at the hearing. The form did not confirm that the declination or waiver of legal representation was Mercer's voluntary decision.

To be sure, in this case, Olinger, who was present when Mercer checked the line declining legal representation, advised the ALJ that she told Mercer there would be no attorney at the hearing. Advising a person that, as a result of checking a box or a line on a form, there would be no attorney at a hearing is not the equivalent of notification that the right to counsel exists upon request and that the right is being waived. Clearly, procedural due process would require more than checking a line on a form declining legal representation to constitute a waiver of the right to request counsel where such a significant liberty interest is at stake.

Moreover, after signing the Appeal Request Form declining legal representation, Mercer received a Notice of Hearing stating that he had the right to request the assistance of counsel. This prevents Mercer's declination of legal representation on the Appeal Request Form from being considered in any way a waiver of the right to request counsel. The Notice of Hearing was dated three days before the administrative hearing and provided no time limit in which the request for the assistance of counsel needed to be made. Under the circumstances, it was reasonable for Mercer to believe that he could request counsel on

the day of the hearing, after having previously checked the line declining legal representation on the Appeal Request Form.

Further complicating the situation, not only did the ALJ treat Mercer's request for counsel as a request for a postponement, which may not have even been necessary to secure representation, but also after Mercer requested counsel, the ALJ made no attempt to ascertain whether Mercer could have been provided legal representation on the day of the hearing. Overall, it is unclear why the ALJ found Mercer's request for counsel to be insufficient to constitute good cause for a postponement. Neither the Appeal Request Form nor Olinger's account of the conversation attendant to Mercer signing the form indicated that Mercer had been advised of any consequences of declining representation on the form, such as being unable to request counsel at the hearing. And, as discussed, neither HG § 10-708 nor the Appeal Request Form impose a time constraint for making a request for counsel. And, the administrative hearing had already been scheduled to occur four days after the date on which the statute required the hearing to be completed and the ALJ's decision to be issued.

We do not hold that an election on paperwork can never operate as a waiver of an individual's right to request counsel under HG § 10-708. With proper advisements, it could. The Appeal Request Form could undoubtedly be redrafted to effectively advise an individual of the right to request the assistance of counsel under HG § 10-708 and the consequences of electing not to do so, and to verify that a waiver or declination of the right is an individual's knowing and voluntary choice. The purpose of an advisement of the right to request counsel and an ascertainment of the waiver of the right is to determine that

an individual is aware of the existence and nature of the right and desires to knowingly and voluntarily waive the right. This could be accomplished through a written advisement and waiver procedure as well as an in-person one.

In sum, the procedure used in this case was insufficient to safeguard the significant constitutional liberty interest at stake—an individual's right to be free from the arbitrary forced administration of psychiatric medication—as well as an individual's right to counsel upon request under HG § 10-708. Although an on-the-record waiver colloquy is not required, in light of the significant liberty interest attendant to the forced administration of medication, verification that an individual wants to knowingly and voluntarily waive the right to request counsel and proceed unrepresented is necessary. In this case, at the administrative hearing, Mercer affirmatively requested counsel and there was no verification that he had knowingly and voluntarily waived the right. For the reasons herein, we reverse the judgment of the Court of Special Appeals.

> **JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. RESPONDENT TO PAY COSTS.**

Circuit Court for Allegany County
Case No. C-01-CV-19-000381
Argued: October 6, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 9

September Term, 2021

_____

JASON MERCER

v.

THOMAS B. FINAN CENTER

_____

> Getty, C.J.,
> McDonald
> Watts
> Hotten
> Booth
> Biran
> Harrell, Jr., Glenn T.
> (Senior Judge, Specially
> Assigned),
>
> JJ.

_____

Concurring and Dissenting Opinion
by McDonald, J., which Booth, J., joins.

_____

Filed: December 17, 2021

I agree with some parts of the Majority Opinion and disagree with other parts.

As Judge Booth observes, the question on which the Court granted a writ of *certiorari* in this case was whether the ALJ was required to make an on-the-record assessment whether Mr. Mercer had waived the statutory right to counsel when he requested the administrative hearing. The Majority Opinion answers that question "no." Majority slip op. at 3, 57, 63. I agree. In that sense, I concur.

The Majority Opinion, however, reverses the decisions of the Court of Special Appeals and the Circuit Court on the ground that the ALJ abused her discretion when she declined Mr. Mercer's belated request for counsel on the day of the hearing. On that issue, again like Judge Booth, I dissent from the Majority Opinion. In my view, we should affirm the well-reasoned opinion of the Court of Special Appeals.

More important than the disposition of this particular appeal[1] is the guidance that the Court's decision will provide to ALJs, the Department of Health ("Department"), mental health facilities, patients, lay advisors, and patient advocates about compliance with HG §10-708 in the future. In that regard, the Majority Opinion stands for the following propositions:

---

[1] The clinical review panel's authorization for medication in this case expired long ago and, in that sense, the issue of whether that decision was correct, substantively or procedurally, is moot. This is not unusual. Given the compressed timeline of HG §10-708, most cases involving an appeal of a clinical review panel decision are moot by the time they reach an appellate court. *See, e.g., Allmond v. Department of Health and Mental Hygiene*, 448 Md. 592, 607 n.10 (2016); *Beeman v. Department of Health and Mental Hygiene*, 107 Md. App. 122, 132-35 (1995). Nevertheless, the Court has discretion to decide the issues. *Id.* The Court's decision in this case will generally apply to a patient at a mental health facility when the facility seeks authorization under HG §10-708 – a circumstance that may apply to Mr. Mercer himself in the future.

1 – A patient at a mental health facility has, upon request, an absolute statutory right to the assistance of counsel at an administrative hearing under HG §10-708 and the patient may invoke that right up to and including the hearing. Majority slip op. at 3 ("an individual may request counsel up to the time of and including at the administrative hearing").

2 – The patient can waive that right. *Id.*

3 – A patient who has elected on a hearing request form to proceed without counsel may be deemed to have waived the right to counsel if the form adequately advises that such an election is "the equivalent of the waiver of the right to request counsel." Majority slip op. at 60. To be effective, the form must describe the benefits of having an attorney, indicate that the patient cannot have a change of mind, and confirm that the declination of counsel is voluntary. *Id.* at 60-61.

4 – The ALJ need not conduct an on-the-record colloquy with the patient to confirm a patient's waiver. *Id.* at 3, 57-58, 60. Instead, what is required is a "verification" that the patient made a knowing and voluntary decision to forgo counsel. *Id.*

5 – That verification may be supplied on a hearing request form that contains the requisite information. *Id.* at 62-63. However, the hearing request form currently used by the Department does not provide the necessary advice and is inadequate to effect a waiver. *Id.* at 60-61.

6 – The current hearing notice form used by OAH, which is necessarily sent subsequent to the hearing request form and which mentions a right to the assistance of counsel without a deadline for invoking that right, may contradict the finding of a waiver via the hearing request form. Even if the Department's hearing request form is revised to be adequate to effect a waiver, the current version of the OAH hearing notice form suggests that a patient does not waive the right to counsel by making an election on the hearing request form. Majority slip op. at 7, 53, 61.

7 – In this case, the ALJ's decision to summon Mr. Mercer's lay advisor and obtain confirmation from her that Mr. Mercer had declined the assistance of counsel when he completed the hearing request form was also inadequate to establish a waiver. *Id.* at 61.

The bottom line appears to be that, at the very least, a revision of the relevant forms is in order. However, there remain questions that go beyond the forms. In particular, the

Majority Opinion does not indicate whether – or under what circumstances – a patient who has waived counsel by executing a form that satisfies the criteria in the Majority Opinion may later retract that waiver. For example, suppose that the patient declines counsel on the new, improved form, but has a change of mind the next day while the hearing is still a week away. Is the waiver still effective? Suppose the change of mind occurs, as in this case, on the morning of the hearing. Is the waiver effective or not?

One may instinctively respond that the patient should not be bound by the declination of counsel in the first case, but perhaps should be foreclosed from retracting the waiver of counsel in the second.

It does not seem reasonable to conclude that a patient who has declined counsel, with appropriate advice via forms and a lay advisor, has an absolute right to invoke a right to counsel mid-hearing – or even on the morning of a scheduled hearing. Timeliness is an important factor when a party seeks to retract a prior waiver.[2] Allowing a retraction at any time is not only impractical, but also would inevitably lead to a postponement during which the patient might be subject to an involuntary emergency administration of the medication under HG §10-708(b)(1) without a hearing.[3]

---

[2] *Cf. State v. Jones*, 270 Md. 388, 393-94 (1973) (noting a general consensus that the likelihood of trial delay is a key consideration in determining whether a court should allow a defendant to revoke an earlier waiver of the right to a jury trial); *Brockington v. Grimstead*, 176 Md. App. 327, 355-57 (2007), *aff'd on other grounds*, 417 Md. 332 (2010) (noting that timeliness is factor to be considered when a party seeks to retract prior waiver).

[3] Something like that happened in this case. During the delay between Mr. Mercer's request for a hearing and the day of the hearing, Mr. Mercer apparently received an

But nor does it seem reasonable to prohibit a patient from ever revoking a waiver made on a form, even if the form is impeccable in providing the necessary information for a knowing and voluntary decision. These hearings necessarily involve a patient experiencing a mental health crisis – whose state of mind may change dramatically between the time the form is completed and the commencement of the hearing. This is particularly true when the patient receives an emergency dose of medication in the interim.

Thus, it may well be that, in a particular case, the verbiage on a form is less important than the patient's discussion with the lay advisor, who is knowledgeable about the mental health law and patient rights.[4] When the change of mind occurs on the day of the hearing, it seems that the ALJ, who can hear directly from the patient[5] and can consult with the lay advisor, is in the best position to assess whether the patient should be bound by the declination of counsel on the form. If that is the case, is the election made by a patient even on an improved form really a waiver at all – or simply another element for an

---

emergency dose of the same medication that the clinical review panel had approved and that was the subject of the hearing.

[4] HG §10-708(a)(2) ("lay advisor" is "an individual … who is knowledgeable about mental health practice and who assists individuals with rights complaints").

[5] In these cases, changes in the patient's mental condition may affect the patient's decision-making. The ALJ is in a better position than an appellate court to consider that factor.

ALJ to consider in exercising discretion whether to grant a belated request for counsel, together with the inevitable postponement of the hearing?[6]

As illustrated by the record in this case, the situation in cases involving the administration of medication against a patient's wishes can be fluid even in the compressed timeline for the patient's appeal, and even a patient who initially has knowingly waived the right to counsel may wish to reconsider. At the same time, the ALJ, who is best positioned to observe the patient's demeanor and, as here, question the lay advisor, must have some discretion to evaluate the circumstances.

Judge Booth has advised that she joins this opinion.

---

[6] As the Majority Opinion accurately notes, the administrative hearing takes place on a fast track. Majority slip op. at 21-23. The patient must request a hearing within 48 hours of the clinical review panel's decision. HG §10-708(*l*). The hearing must take place within seven days of the clinical review panel's decision, unless there is a postponement for good cause or by agreement. *Id.* The ALJ must state a decision and make findings of fact on the record at the hearing. *Id.* Judicial review of the ALJ's decision in a circuit court proceeds on a similarly compressed timeline. HG §10-708(m). Even an attorney well-versed in the substance and procedure of the statute will need time to get up to speed on the specific facts relevant to the patient's situation.

Circuit Court for Allegany County
Case No.: C-01-CV-19-000381
Argued: October 6, 2021

IN THE COURT OF APPEALS

OF MARYLAND

No. 9

September Term, 2021

JASON MERCER

v.

THOMAS B. FINAN CENTER

Getty, C.J.
McDonald
Watts
Hotten
Booth
Biran
Harrell, Jr., Glenn T.
 (Senior Judge, Specially Assigned)

JJ.

Concurring and Dissenting Opinion
by Booth, J., which McDonald, J., joins.

Filed: December 17, 2021

Although I agree with many aspects of the Majority Opinion, I respectfully disagree with the Majority's bottom line, and I would affirm the well-written opinion of the Court of Special Appeals. *See Mercer v. Thomas B. Finan Center*, 249 Md. App. 144 (2021).

Mr. Mercer presented the following question in his Petition for Writ of *Certiorari:*

Did the Court of Special Appeals err by holding that Health-General § 10-708 does not require an ALJ to make an on-the-record assessment of whether [Mr. Mercer] waived his statutory right to counsel?

The Majority ultimately holds that an on-the-record colloquy is not required. *See* Majority Slip Op. at 51 (". . . we agree with the Center that an on-the-record advisement and waiver colloquy are not required to determine a waiver of the right to request counsel under HG § 10-708 . . ."). The Majority nonetheless reverses the judgment of the Court of Special Appeals, by "conclud[ing] that due process requires, at a minimum, verification that an individual was properly advised and knowingly and voluntarily waived the right to request counsel and elected to proceed unrepresented." *Id.*

In my view, having correctly answered the question presented in the petition for writ of *certiorari* in the negative—that an on-the-record advisement and waiver colloquy are not required in order to determine whether a patient waived his statutory right to counsel—the question then becomes whether the administrative law judge ("ALJ") acted within her discretion when she confirmed, by reviewing the appeals form, and by conferring with Ms. Olinger, that Mr. Mercer had previously declined to exercise his right to counsel.

I agree with the Court of Special Appeals that, based upon the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976), the ALJ did not deprive Mr. Mercer of procedural due process in declining to postpone the hearing. Mr. Mercer invoked his right

to appeal, and in doing so, affirmatively declined the assistance of counsel. Mr. Mercer completed the form declining counsel on August 5, and the hearing was scheduled for August 16. Mr. Mercer had several days to change his mind about representation. He waited until just before the hearing began to request counsel. The ALJ considered the comments made by Mr. Mercer's rights advisor, Ms. Olinger, who met with him, and stated they "went over the different categories. And he said, no need for an attorney. So, he did sign the [waiver] form." Ms. Olinger stated that she "signed the date and time and initialed that and explained that there would be no attorney present." The ALJ is in a better position than an appellate court to make credibility determinations concerning Ms. Olinger's account of her multiple meetings with Mr. Mercer, her explanations of the ramifications of his decision, and his unequivocal statement that he saw no need for an attorney. I agree with the Court of Special Appeals that the ALJ did not abuse her discretion when she declined to postpone the hearing after concluding that Mr. Mercer "had 'so clearly identified to Ms. Olinger not only verbally but on this form that [he] decline[d] legal counsel[.]'" *Mercer*, 249 Md. App. at 167. In my view, the ALJ correctly undertook the balancing of the interests of Mr. Mercer and the Center at the hearing. This Court should leave such considerations to the ALJ, who had substantial evidence to deny Mr. Mercer's last-minute request. Under these circumstances, we should not substitute our judgment for the judgment of the ALJ.

Judge McDonald has authorized me to state that he joins in this opinion.